THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

ERICKSON PRODUCTIONS, INC., and JIM ERICKSON,

    *Plaintiffs*,

    v.

ATHERTON TRUST; KRAIG R. KAST; and ONLY WEBSITES, INC.

    *Defendants*.

No. 12-CV-1693-PGG

Hon. Paul G. Gardephe

ECF CASE
Electronically Filed

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' APPLICATION FOR AN AWARD OF STATUROY DAMAGES UNDER 17 U.S.C. § 504(c)(2) AND THEIR <u>COSTS AND ATTORNEYS' FEES UNDER 17 U.S.C. § 505</u>**

Danial A. Nelson (DN4940)
Kevin P. McCulloch (KM0530)
NELSON & McCULLOCH LLP
The Chrysler Building
405 Lexington Ave., 26th Floor
New York, New York 10174
T: (646) 704-4900
F: (646) 308-1178

December 3, 2012

*Attorneys for Plaintiff*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................................................II

FACTUAL BACKGROUND .............................................................................................................. 1

SUMMARY OF ARGUMENT ............................................................................................................ 3

ARGUMENT .......................................................................................................................................... 4

I.      PLAINTIFFS ARE ENTITLED TO AN AWARD OF MAXIMUM STATUTORY DAMAGES AND THEIR FULL COSTS AND ATTORNEYS' FEES TO DATE. ...................................................... 4

      A.    Plaintiffs Are Permitted To Recover Statutory Damages Under 17 U.S.C. § 504(c) And Hereby Elect Such Damages .............................................. 4

      B.    An Award Of Heightened Statutory Damages Under 17 U.S.C. § 504(c)(2) Is Appropriate Because Defendants' Infringements Were Willful. ............................................................................................................... 6

      C.    Maximum Statutory Damages Are Warranted And Appropriate. ........................... 8

      D.    Plaintiffs Are Entitled To Recover Their Costs and Attorneys' Fees Under 17 U.S.C. § 505. ...................................................................................... 10

CONCLUSION ................................................................................................................................... 12

## TABLE OF AUTHORITIES

**CASES**

*Antonmarchi v. Consol. Edison Co. of New York, Inc.*, No. 03-cv-7735, 2012 WL 3126004 (S.D.N.Y. July 31, 2012) .............................................. 12

*Cable/Home Comm. Corp. v. Network Prods, Inc.*, 902 F.2d 829 (11th Cir. 1990) .................................................................................................... 7

*Cf. Grosset & Dunlap, Inc. v. Gulf & W. Corp.*, 534 F. Supp. 606 (S.D.N.Y. 1982) .................................................................................................. 12

*Chi-Boy Music v. Charlie Club, Inc.*, 930 F.2d 1224 (7th Cir. 1991) ........................................................................................................................ 8

*Diamond v. Am-Law Publ'g Corp.*, 745 F.2d 142 (2d Cir. 1984) ................................................ 11

*F.W. Woolworth Co. v. Contemporary Arts, Inc.*, 344 U.S. 228 (1952) ...................................................................................................................... 9

*Fallaci v. New Gazette Literary Corp.*, 568 F. Supp. 1172 (S.D.N.Y. 1983) .................................................................................................... 6

*Fitzgerald Publ'g Co. v. Baylor Publ'g Co.*, 807 F.2d 1110 (2d Cir. 1986) ...................................................................................................................... 6

*Fitzgerald Publ'g Co.*, 807 F.2d at 1115-17 ................................................................ 6, 8

*Fogerty v. Fantasy, Inc.*, 510 U.S. 517 (1993) ............................................................... 11

*Grosset & Dunlap, Inc. v. Gulf & W. Corp.*, 534 F. Supp. 606 (S.D.N.Y. 1982) .................................................................................................. 12

*Hensley v. Eckerhart*, 461 U.S. 424 (1983) .................................................................... 11

*Knitwaves, Inc. v. Lollyogs Ltd.*, 71 F.3d 996 (2d Cir. 1995) ............................................ 6

*Los Angeles News Service v. Reuters Television Intern., Ltd.*, 149 F.3d 987 (9th Cir. 1998) ....................................................................................... 8

*LV v. New York City Dept. of Educ.*, 700 F. Supp. 2d 510 (S.D.N.Y. 2010) .................................................................................................. 12

*Manno v. Tennessee Prod. Ctr., Inc.*, 657 F. Supp. 2d 425 (S.D.N.Y. 2009) .............................................................................................. 8, 9

*Matthew Bender*, 240 F.3d at 122 ............................................................................... 11

*Matthews v. Freedman*, 157 F.3d 25 (1st Cir.1998) ........................................................ 11

*Mitek Holdings, Inc. v. Arce Eng'g Co.*, 198 F.3d 840 (11th Cir. 1999) .................................................................................................................. 11

*N.A.S. Import, Corp. v. Chenson Enterprises, Inc.*, 968 F.2d 250 (2d Cir. 1992) ....................................................................................................... 6

*Positive Black Talk, Inc. v. Cash Money Records, Inc.*, 394 F.3d 357 (5th Cir. 2004) ...................................................................................... 11

*Rozell v. Ross–Hoist*, 576 F. Supp. 2d 527 (S.D.N.Y.2008) ........................................................... 12

*Ruggiero v. Krzeminski*, 928 F.2d 558 (2d Cir. 1991) ................................................................... 11

*Superior Form Builders, Inc. v. Dan Chase Taxidermy Supply Co.*, 74 F.3d 488 (4th Cir. 1996) ........................................................................ 10

*Warner Bros. Inc. v. Dae Rim Trading, Inc.*, 877 F.2d 1120 (2d Cir. 1989) .................................................................................................................. 11

*Yurman Design, Inc. v. PAJ, Inc.*, 262 F.3d 101 (2d Cir. 2001) .................................................. 8, 10

**FEDERAL STATUTES AND RULES**

17 U.S.C. § 412 .................................................................................................................. 4

17 U.S.C. § 504 ............................................................................................................ *passim*

Plaintiffs Erickson Productions, Inc. ("Erickson Productions") and Jim Erickson ("Erickson") (collectively "Plaintiffs"), by and through undersigned counsel, hereby submit this memorandum of law and facts in support of their request for an award of statutory damages under 17 U.S.C. § 504 and their full costs and attorneys' fees to date under 17 U.S.C. § 505.

## FACTUAL BACKGROUND

Plaintiff Jim Erickson is a professional photographer who makes his living taking and licensing photographs. *See* Amd. Compl. (Dkt. No. 4) ¶ 13. Plaintiff Erickson Productions is a distributor and licensor of stock photography images taken by Jim Erickson. *Id.* ¶ 12.

Defendant Atherton Trust ("Atherton") exploited three (3) of Erickson's copyrighted photographs for commercial use on its website without permission. *Id.* ¶¶ 21-27 & Exs 1-3. The infringing website was created and published by Defendant Only Websites, Inc. ("Only Websites"). *Id.* ¶ 18. Defendants acquired Plaintiffs' photos by illegally copying them from the website of Wells Forgo Wealth Management Marketing ("Wells Fargo"). *See* Amd. Compl. ¶¶ 28-31 & Exs. 1-6. Wells Fargo obtained these images under a legitimate license from Erickson Productions issued on August 25, 2010. *See* Hughes Decl. ¶ 15, Ex. D.

On July 12, 2011, counsel for Plaintiffs contacted Defendants Kast and Atherton Trust to demand that they immediately cease and desist their unauthorized use of Plaintiffs' copyrighted images on the Atherton website. *See* Amd. Compl. ¶ 32; McCulloch Decl. Ex. A. In response, Defendant Kast disclaimed any knowledge that Only Websites had copied the photos from the Wells Fargo site, instead claiming that he had instructed Only Website to purchase images "from authorized image services[.]" *See* McCulloch Decl. Ex. B at 3. When challenged on this point, Kast made clear that he intended to attempt to avoid liability by improperly hiding behind the corporate structure of Defendant Atherton Trust, claiming: "You are invited to waste your time and money, even if you get a charging order you will not collect anything because of the way

1

this company is structured." *Id* at 1. Kast then cut off all further communications for almost a year, forcing Plaintiffs to pursue their claims in court.

After the Complaint was filed, Kast again indicated that he intended to "simply shut down this company [so] you and Erickson will get nothing." McCulloch Decl. Ex. C. Kast also made clear that he intended to intentionally drive up the costs of litigation in the hopes that Plaintiffs would abandon their claims. *Id.* ("My guess is it will cost Jim Erickson a minimum of $500,000 [to litigate, so] even if he wins, it will be for no monetary gain."). Kast also threatened to take steps to damage Plaintiffs' business by organizing "a boycott of Erickson video and photo products within days of our being served." *Id.*

True to his word, Defendant Kast has attempted, at every turn, to hide behind the corporate structure of Atherton Trust to avoid liability for undeniable infringements. In fact, Kast submitted documents to this Court claiming that he "dissolved" Atherton Trust in May 2012, almost a full year after being made aware of these claims and shortly after this lawsuit was filed.

After Plaintiffs eventually were able to serve the complaint on Defendants Kast and Atherton Trust, Kast filed various motions and declarations that are replete with misleading and apparently outright false statements. For instance, Kast represented to the Court, under penalty of perjury, that Only Websites was entirely responsible for selecting the content of the Atherton Trust website. Records obtained from Only Websites, however, make clear that Kast provided detailed instructions to Only Websites to copy the Wells Fargo website and e supplied the content to Only Websites. *See* McCulloch Decl. Ex. D ("Call Log") at 3-8. These records also reveal that Kast approved the final website and thus was aware, contrary to his representations to the Court, that the site was going "live" and would be accessible by the public. *Id.*

2

Kast also represented to the Court, again under penalty of perjury, that he "never purposefully availed myself to do business in New York [sic]" and that "neither the Trust nor I solicited any business from anyone in New York." These representations also are directly contradicted by documentary evidence, including screen captures from the Atherton Trust website itself, which expressly lists "New York—Northern New Jersey—Long Island" as one of the areas in which Atherton Trust has "wealth managements specialists." McCulloch Decl. Ex. E at 1. The Atherton Trust website also included numerous client testimonials demonstrating that Kast and Atherton Trust conducted business in New York and this District through 2011. *Id.* at 3. The fact that the infringing website includes *both* (i) an express offer to do business and even travel to meet potential clients located in New York and (ii) testimonials from numerous clients located in New York is stark evidence that Kast's representations to this Court are false.

These are but two examples of misleading and outright false representations made by Defendant Kast in his continuing effort to avoid liability. As shown herein, this conduct further supports a finding that Defendants conduct is willful and warrants heightened statutory damages.

## SUMMARY OF ARGUMENT

During the hearing held on November 20, 2012 regarding the Order to Show Cause issued by the Court on October 19, 2012 (Dkt. No. 12, filed on Oct. 19, 2012), the Court held that Defendants Atherton Trust and Only Websites are in default and that a default judgment should be entered against them. The Court permitted Plaintiffs to submit additional materials to show that they are entitled to elect statutory damages under 17 U.S.C. §504 and to recover their cost and attorneys' fees under 17 U.S.C. § 505.

As shown herein, Plaintiffs are entitled to recover statutory damages under Section 504 of the Copyright Act because their copyrights in the three photos at issue were registered with the Copyright Office prior to the commencement of the infringements. The evidence also supports

3

an award of heightened statutory damages under 17 U.S.C. § 504(c)(2) for willful copyright infringement.

Because there are three infringements relating to three separately registered copyrights, Plaintiffs are entitled to recover up to $150,000 per infringement. The facts and circumstances of this case warrant an award of heightened damages and support a maximum award for each infringement. Plaintiffs thus should be awarded statutory damages of $450,000.

Also, because Plaintiffs are the "prevailing party" on these claims against the defaulting Defendants, Plaintiffs are entitled under Section 505 of the Copyright to an award of their full costs and attorneys' fees to date.

## ARGUMENT

I. **PLAINTIFFS ARE ENTITLED TO AN AWARD OF MAXIMUM STATUTORY DAMAGES AND THEIR FULL COSTS AND ATTORNEYS' FEES TO DATE.**

   A. **Plaintiffs Are Permitted To Recover Statutory Damages Under 17 U.S.C. § 504(c) And Hereby Elect Such Damages.**

Under the Copyright Act, a copyright owner is entitled to recover statutory damages and attorneys' fees so long as the subject copyrights were registered with the U.S. Copyright Office before the commencement of the infringements. *See* 17 U.S.C. § 412. Accordingly, because Plaintiffs' copyrights in the photos at issue in this case were registered with the U.S. Copyright Office prior to the Defendants' infringements, Plaintiffs are permitted to recover statutory damages.

Plaintiffs' copyrights in the three photos illegally copied by Defendants from the Wells Fargo website and then published without permission or license on the Atherton Website are registered under three separate copyright registrations with effective dates of (i) January 9, 2008; (ii) August 26, 2010; and (iii) October 25, 2010. *See* Hughes Decl. ¶¶ 7, 10, 13. Because the infringements at issue began after the latest effective date of registration, Plaintiffs are entitled to

4

recover statutory damages under Section 504 of the Copyright Act for all three claims.

As the Complaint alleges, Defendants copied the three photos at issue here (along with significant other content) from the website of Wells Fargo, one of Erickson Productions' clients who obtained a legitimate license to use these images on its website.  Amd. Compl. ¶ 25-28 & Exs. 1-6.  These photos appeared on the Wells Fargo website only after Wells Fargo purchased a license on August 25, 2010.  *See* Hughes Decl. ¶ 15 & Ex. D.  Plaintiffs' copyrights in the photo identified as Image ID 21002 / Film No. 07006-3520 are registered under Copyright Registration VA 1-632-501, which has an effective date of registration of January 9, 2008.  *Id.* ¶ 13 & Ex. C.  Defendants thus could not have possibly even acquired this photo until well after Plaintiffs' copyrights in this photo were registered.

Although Plaintiffs' copyrights in the other two photos were registered shortly after the license was issued to Wells Fargo, the registrations were submitted to and approved by the Copyright Office prior to the infringements at issue here.  According to a "call log" maintained by Only Websites, Kast first contacted Only Websites on or about December 16, 2010, months after the effective date of registration of all three photos.  *See* Call Log (McCulloch Decl. Ex. D) at 2 (12/16/10, 8:52 AM Note). This call log further demonstrates that Kast instructed Only Website to use the Wells Fargo site "as the template" for the Atherton website on December 20, 2010.  *See* Call Log at 3 (12/20/10, 11:10 AM Note).  Kast then provided Only Websites "content" for the website, including Plaintiffs' photos, on January 28, 2011.  *See* Call Log at 6-7 (1/28/11, 11:37 AM Note).  The call log also shows that the final round of edits on the website was not concluded until at least March 1, 2011, and thus the website could not have been published and displayed to the public until at least that date.  *See* Call Log at 8-9.

This evidence conclusively demonstrates that Defendants' infringements did not

commence until after Plaintiffs' copyrights in all three of the photos at issue in this case were registered with the U.S. Copyright Office. Plaintiffs thus are entitled to recover statutory damages, including heightened damages for "willful" copyright infringement, under Section 504 of the Copyright Act.

Plaintiffs hereby elect statutory damages under the Copyright Act.

### B. An Award Of Heightened Statutory Damages Under 17 U.S.C. § 504(c)(2) Is Appropriate Because Defendants' Infringements Were Willful.

Even without discovery, there is indisputable evidence that the infringements at issue in this action were "willful" for purposes of awarding heightened statutory damages under 17 U.S.C. § 504(c)(2).

As this Court repeatedly has concluded, willfulness "need not be proven directly but may be inferred from the defendant's conduct." *N.A.S. Import, Corp. v. Chenson Enterprises, Inc.*, 968 F.2d 250, 252 (2d Cir. 1992). The Court also "need not find that an infringer acted maliciously to find willful infringement." *Fitzgerald Publ'g Co. v. Baylor Publ'g Co.*, 807 F.2d 1110, 1115 (2d Cir. 1986) (citing *Fallaci v. New Gazette Literary Corp.*, 568 F. Supp. 1172, 1173 (S.D.N.Y. 1983)). Rather, determining whether Defendants' infringements were willful requires only a showing that they either acted "recklessly" or had "actual or constructive knowledge" that their actions constituted an infringement. *Id.*; *Knitwaves, Inc. v. Lollyogs Ltd.*, 71 F.3d 996, 1010 (2d Cir. 1995).

All circumstances surrounding the infringements are relevant factors in the willfulness inquiry. *See Fitzgerald Publ'g Co.*, 807 F.2d at 1115-17. Another relevant factor is whether the Defendants "should have known" that their conduct was infringing, which may be proven simply by showing that the Defendants were "experienced" with copyright matters or "must have realized" that their conduct was impermissible. *Id.*; *accord Fallaci*, 568 F. Supp. at 1173

(holding that, "as the publisher of a copyrighted newspaper, the defendant was or should have been aware that its unauthorized republication of [another paper's] article constituted copyright infringement"); *accord Cable/Home Comm. Corp. v. Network Prods, Inc.*, 902 F.2d 829, 851 (11th Cir. 1990).

The evidence demonstrates that Defendants' infringements were egregious and willful. For instance, the "call log" maintained by Only Websites reveals that all Defendants fully understood that copying content from the Wells Fargo website would run afoul of copyright restrictions. According to Only Websites' own records, the Defendants discussed copyright issues and knew that "[w]e need to be sensitive to the copy writing [sic] and change it up a bit." *See* Call Log at 3 (12/20/11, 11:10 AM Note). Notwithstanding this knowledge that their conduct would run afoul of the Copyright Act, Defendants proceeded to copy significant content, including Plaintiffs' photos, directly from the Wells Fargo website without making any effort to obtain permission or a license to use the content.

Defendants also "should have known" that their copying and use of photos from another company's website was not permissible and would violate copyright laws. It is not plausible that Defendants believed that the photos that they were copying from the Wells Fargo website were in the public domain or otherwise free to copy and use. Nevertheless, Defendants never bothered to contact Wells Fargo to determine who owned the photos, and they certainly did not make any effort to obtain permission or a license to use the photos. Furthermore, as a company whose entire business revolves around designing websites for clients, Only Websites should have been aware that its unlicensed use of photos taken from another website was unlawful.

On these facts, there can be no serious question that the Defendants fully understood that their copying and use of these photos constituted an infringement.

### C. Maximum Statutory Damages Are Warranted And Appropriate.

Because Plaintiffs are entitled to statutory damages and the Defendants' infringements were willful, the Copyright Act permits the Court to award heightened damages up to $150,000 per infringed copyright. *See* 17 U.S.C. § 504(c)(2). The statutory damages award is applied "jointly and severally" against both Defendants.

In determining the amount of the statutory damage to award, the Court has broad discretion to consider any facts it deems relevant. Courts in this District generally look to the following factors:

> (1) "the expenses saved and the profits reaped," (2) "the revenues lost by the plaintiff," (3) "the value of the copyright," (4) "the deterrent effect on others besides the defendant," (5) "whether the defendant's conduct was innocent or willful," (6) "whether a defendant has cooperated in providing particular records from which to assess the value of the infringing material produced," and (7) "the potential for discouraging the defendant."

*Manno v. Tennessee Prod. Ctr., Inc.*, 657 F. Supp. 2d 425, 433 (S.D.N.Y. 2009) (quoting *Fitzgerald Publ'g*, 807 F.2d at 1117).

In considering these factors, the Court also must bear in mind and attempt to further the goals of the Copyright Act. As these factors reflect, the goals of the Copyright are not limited to compensation or restitution. Rather, the Copyright Act provides for heightened statutory damages specifically to allow courts and juries to achieve the additional goals of deterrence and punishment. *See, e.g.*, *Yurman Design, Inc. v. PAJ, Inc.*, 262 F.3d 101, 113 (2d Cir. 2001) ("statutory damages are not meant to be merely compensatory or restitutionary"); *Los Angeles News Service v. Reuters Television Intern., Ltd.*, 149 F.3d 987, 996 (9th Cir. 1998) ("awards of statutory damages serve both compensatory and punitive purposes"); *Chi-Boy Music v. Charlie Club, Inc.*, 930 F.2d 1224, 1229 (7th Cir. 1991) (holding court may consider several factors in awarding damages, including deterrence and punishment). The Court's damages award,

therefore, must not only compensate Plaintiffs for their lost license fees, it also must force the Defendants to give up any ill-gotten gains, punish them for their illegal conduct, and deter them from committing future infringements.  *See, e.g.*, *F.W. Woolworth Co. v. Contemporary Arts, Inc.*, 344 U.S. 228, 232 (1952) ("The statutory rule… not merely compels restitution of profit and reparation for injury but also is designed to discourage wrongful conduct").  In addition, the Court's damages award also should serve as a deterrent to other potential infringers.  *See, e.g.*, *Manno*, 657 F. Supp. 2d at 433 (identifying "the deterrent effect on others besides the defendant" as a central factor in determining statutory damages).

Under these circumstances, the Court should award Plaintiffs the maximum statutory damages allowed under the Copyright Act:  $150,000 per infringed copyright, or $450,000 total. This award is justified and appropriate in light of the Defendants' decision to copy and use Plaintiffs' photos despite their obvious awareness that their conduct was infringing.  Heightened damages also are necessary and appropriate in light of Defendants Kast and Atherton's refusal to cooperate with Plaintiffs and due to Defendants' continuing efforts to avoid liability, including by making misleading or outright false representations to this Court.

Heightened damages also are necessary to deter other web designers from copying photos to use in websites for other clients.  Plaintiffs' entire business relies on the fees generated by licensing stock photos to clients under legitimate license agreements.  The Defendants' conduct thus presents a real and immediate threat to Plaintiffs' livelihood.  The Court thus should send a strong signal that this blatantly illegal copying by web designers will not be tolerated.

Because the factors relevant to determining statutory damages are broad and include the entire circumstances surrounding the infringement, numerous courts have held that significant statutory damages are appropriate and reasonable, even where such an award greatly exceeds

actual damages, so long as they are supported by the other relevant factors. *See, e.g.*, *Yurman Design*, 262 F.3d at 113. For instance, in *Superior Form Builders, Inc. v. Dan Chase Taxidermy Supply Co.,* 74 F.3d 488 (4th Cir. 1996), the Fourth Circuit approved an award of $400,000—the maximum statutory damages permitted at the time—even though the lost fees were negligible and the infringer's total profits were insignificant. *Id.* at 496. This award was justified, according to the Court of Appeals, because the evidence showed that the defendant's infringements were willful and that it had made "underhanded" efforts to conceal its misconduct from the copyright owners. *Id.* at 497. The same factors are present here, and thus an award of maximum statutory damages is entirely appropriate and justified.

If the Court does not award maximum statutory damages, Plaintiffs submit that the damages award should be, at a minimum, above the maximum damages allowed for *non-willful* infringement given that these infringements undoubtedly are willful. Under 17 U.S.C. § 504(c)(1), the Court may award up to $30,000 per infringement (or $90,000 total here) "as the court considers just" for each infringement deemed not willful. Thus, in the event that the Court does not award maximum statutory damages for willful infringement, it should at least award damages in the range between the maximum amounts allowed for non-willful and willful infringement, or between $90,000 and $450,000. 17 U.S.C. § 504(c).

### D. Plaintiffs Are Entitled To Recover Their Costs and Attorneys' Fees Under 17 U.S.C. § 505.

Section 505 of the Copyright Act provides that the Court "in its discretion may allow the recovery of full costs . . . [and] may also award a reasonable attorney's fee to the prevailing party as part of the costs." 17 U.S.C. § 505. In order to be deemed a "prevailing party" under Section 505, a plaintiff needs only to succeed "on a significant issue in the litigation that achieves some of the benefits the party sought in bringing suit." *Hensley v. Eckerhart*, 461 U.S.

424, 433 (1983); *see also Ruggiero v. Krzeminski*, 928 F.2d 558, 564 (2d Cir. 1991). Because the Court already has held that Defendants Atherton Trust and Only Websites are in default and that an order of default judgment is appropriate, Plaintiffs have "prevailed" on their claims against these Defendants and should be awarded their attorneys' fees and costs.

Although the decision whether to award fees is left to the discretion of the district court, *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 533 (1993), awarding fees "is the rule rather than the exception" in copyright cases. *Positive Black Talk, Inc. v. Cash Money Records, Inc.*, 394 F.3d 357, 381 (5th Cir. 2004) (citations omitted). In exercising this discretion, the Court must consider whether awarding fees would "vindicate underlying statutory policies." *Warner Bros. Inc. v. Dae Rim Trading, Inc.*, 877 F.2d 1120, 1127 (2d Cir. 1989). As the Supreme Court has instructed, district courts deciding whether to award costs and fees must remain "faithful to the purposes of the Copyright Act." *Fogerty*, 510 U.S. at 534 n.19.

Therefore, the decision whether to award costs and fees must consider that the "principle purpose of the [Copyright Act] is to encourage the origination of creative works by attaching enforceable property rights to them." *Diamond v. Am-Law Publ'g Corp.*, 745 F.2d 142, 147 (2d Cir. 1984). Accordingly, courts should award attorneys' fees if such an award would promote the goals of the Copyright Act, including "considerations of compensation and deterrence." *See Matthew Bender*, 240 F.3d at 122 (citing *Matthews v. Freedman*, 157 F.3d 25, 29 (1st Cir.1998)). The decision whether to award costs also should seek to "encourag[e] the raising of objectively reasonable claims and defenses, which may serve not only to deter infringement but also to ensure 'that the boundaries of copyright law [are] demarcated as clearly as possible' in order to maximize the public exposure to valuable works." *Mitek Holdings, Inc. v. Arce Eng'g Co.*, 198 F.3d 840, 842-43 (11th Cir. 1999) (quoting *Fogerty*, 510 U.S. at 526-27).

An award of costs and fees under Section 505 is appropriate and warranted here because Plaintiffs were forced to file this lawsuit to protect their copyrights. *See Grosset & Dunlap, Inc. v. Gulf & W. Corp.*, 534 F. Supp. 606, 609 (S.D.N.Y. 1982) ("When attorneys' fees are awarded to a prevailing plaintiff, the statutory provision fulfills its purpose as an added deterrent against copyright infringement"). Fees also are warranted here because this litigation was necessary because Defendants Kast and Atherton were entirely uncooperative and went to significant lengths to attempt to avoid liability. Plaintiffs have been forced to expend significant time and resources pursuing these claims, including tracking down the Defendants, effecting service, and responding to illegitimate motions. The goals of the Copyright Act can only be served by awarding Plaintiffs their full costs and attorneys' fees to date.

A summary and accounting of Plaintiffs' costs and fees are attached as Exhibit F to the McCulloch Declaration filed in support of this application. Plaintiffs' total costs to date are $872 and their attorneys' fees to date are $99,730. The costs and fees are supported with the necessary records, which identify the work conducted by Plaintiffs' counsel with the requisite specificity. These records also identify the hourly rate charged by Plaintiffs' counsel, which are within the range of fee rates already determined to be reasonable for this region and the skill level of Plaintiffs' counsel. *See LV v. New York City Dept. of Educ.*, 700 F. Supp. 2d 510, 519 (S.D.N.Y. 2010) (approving $600/hour rate); *Antonmarchi v. Consol. Edison Co. of New York, Inc.*, No. 03-cv-7735, 2012 WL 3126004, at *2 (S.D.N.Y. July 31, 2012) (approving $530/hour rate); *Rozell v. Ross–Hoist*, 576 F. Supp. 2d 527, 545 (S.D.N.Y.2008) (approving $600/hour rate).

## CONCLUSION

For the forgoing reasons, the Court should award Plaintiffs' maximum statutory damages of $150,000 per infringement (or $450,000 total) and their full costs and attorneys' fees to date of $100,602.

13

Dated: December 3, 2012

                                      Respectfully submitted,
                                      NELSON & McCULLOCH LLP

                                      Danial A. Nelson (DN4940)
                                      Kevin P. McCulloch (KM0530)
                                      The Chrysler Building
                                      405 Lexington Ave., 26th Floor
                                      New York, New York 10174
                                      T: (646) 704-4900
                                      F: (646) 308-1178

                                      *Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

      I hereby certify that on December 3, 2012, I caused to be served a true and correct copy of the foregoing document to be served by overnight U.S. Mail to the following parties:

Kraig R. Kast
12155 Vista Terraza Court
Valley Center, CA  92082

Daniel Todd
Only Websites, Inc.
831 East 340 South, Suite 200
American Fork, UT 84003

DATED:  December 3, 2012

_____
Danial A. Nelson