12cv1693 (PGG)

Docket and File

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## INTRODUCTION

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 5/21/2012

Defendants are Atherton Trust- A Delaware Statutory Trust (Trust) and Kraig R. Kast an individual (Kast) who was the Managing Trustee of the Trust, who have as their primary business and residential location San Diego County, California. The Trust is approved to do business in California by the California Secretary of State. The Trust was engaged in the business of providing Trustee, Guardian, Conservator, Executor, Care Management, Estate Management, Investment Management, Asset Management and Insurance services under a financial services business classification.

In the fall of 2010, the Trust decided it needed a new website and chose 'Only Websites, Inc.' of American Fork, UT as a vendor to create a website. 'Only Websites, Inc.' had built the Trust's previous website in 2006 and had performed well. 'Only Websites, Inc.' is a professional developer of websites primarily for the legal profession as well as for commercial entities and individuals. The creation of the Trust's website was to be based on standard templates, tools, designs and operational functionality which are used in millions of websites around the world

so as to avoid custom development cost and make it easy for the user, based on the common financial services industry's standard look, feel and operational features. The site would use common financial service description terminology common to the Trust's industry segment often referred to as written content and describe the Trust's use of standard consulting industry methodologies used by the Trust and consulting companies for the last twenty years.

A standard 'Only Websites, Inc.' original base template, which contained two picture/text boxes and three columns on the home page and text or graphics excluding pictures to speed loading of the page on secondary pages was put on the Development website by 'Only Websites, Inc.'. 'Only Websites, Inc.' added 'filler' verbiage on 'Only Websites, Inc.' development website template to be tested for operational functionality, spacing, image placement, appearance, etc. A Development Website Template is an online draft of the template, owned, created and maintained by 'Only Websites, Inc.' that can be accessed by an 'Only Websites, Inc.' client ***only*** (in this case, the Trust) to monitor text box placement, and verbiage content and placement. During the development phase of the vendor's development website, it was the Defendant's understanding from 'Only Websites, Inc.' that the 'Only Websites, Inc.' Development Website was confidential and not able to be viewed by anyone other than internal employees of 'Only Websites, Inc.' and the Trust (this is standard procedure when a vendor is

hired to create a corporate website off-site and is password protected to preserve confidentiality). Obviously, no company or individual would want a partially completed website to be able to be viewed by the public as it could adversely affect the company or individual's image.

Development began at 'Only Websites, Inc.' in January 2011 and continued at a slow pace after many delays due to contractor's personnel changes and job scheduling problems. The original development was to be completed by mid–February 2011 however, the site was delayed for many months. After speaking at length with the 'Only Websites Inc.' development team in January 2011 the Trust purchased the only image it planned to use on the Trust's website on February 1, 2011 from Corbis for $35 (See Exhibit A purchased image and Exhibit B purchase invoice and Exhibit C Corbis' pricing for the image ranging from $15 to $475). Six months into the development of 'Only Websites, Inc.' construct, Defendants received an email message on July 12, 2011 from Plaintiff's attorney stating that three images owned by Plaintiff were displayed on the 'Only Websites, Inc.' development website without Plaintiff's permission and demanded compensation in addition to removal. The Trust was shocked to learn that 'Only Websites, Inc.' development website was able to be viewed by the public, and that the images in question that were placed on the Development Website by 'Only Websites, Inc.' were not previously licensed by 'Only Websites, Inc.'. In full cooperation with

Plaintiff's Attorneys, Defendants informed Plaintiff's attorney that this was a development website by a contractor. Plaintiff's attorney knew this was the case because printed on the bottom of every page was the statement "Web Design by Only Websites Inc." (Please see Plaintiff's Exhibits enclosed under Defendant's Exhibit D, Exhibit E and Exhibit F). Further that the Trust would immediately advise 'Only Websites, Inc.' about the images on their site and that the site was accessible by the public, and suggested they remove the images and disallow access to their development site immediately. Further Defendants advised Plaintiff's attorney that "Only Websites Inc.' was not authorized by the Trust to put Plaintiff's images on the development website, that the Trust had no intent to use Plaintiff's images and lastly that if any images were to be used they would be licensed by the Trust from a company like CORBIS. Within minutes of receiving Plaintiff's emailed letter, Defendant contacted the 'Only Websites, Inc.' project manager, and was told of Defendant's discovery. Defendant suggested 'Only Websites, Inc.' should immediately remove Plaintiff's images from 'Only Websites, Inc.' Development website. A confirming email was received by Defendants from 'Only Websites, Inc.', acknowledging their error and asserting that the images had indeed been removed by them within 24 hours. At no time did the Defendants ever request 'Only Websites, Inc.' to make 'Only Websites, Inc.' development website visible to the public, or to use non-licensed images. The

Trust had no responsibility for, or knowledge of this action. Nor was it ever the Defendant's intention to use or benefit from the use of Plaintiff's images. The Plaintiff's images were put on the Development Website by 'Only Websites, Inc.', and used as 'filler', i.e. examples of image placement only and were not to be seen by anyone other than employees of the Trust and 'Only Websites, Inc.'. Unknown to Defendants, 'Only Websites, Inc.' did not password protect their construct development site which was ***owned***, ***housed***, ***created***, ***designed*** and ***maintained*** by them.

The 'Only Websites, Inc.' Development website was eventually completed in September 2011, a full 60+ days (sixty days) after first contact with Plaintiff and Plaintiff's attorney. Then payment was made to Only Websites Inc.' by the Trust for this finished website, then and only then transferring ownership of the website to Defendants.

Only one photo, **"Exhibit A"** was planned to be used on the Trust's final completed website and it appeared on the home page of the Trust's website. Upon review after notice, the Trust would never have chosen to use the Plaintiff's images as they are deemed to be of **insufficient quality**, **dark** and **moody** and of the ***incorrect size*** to be used by the Trust on its website. The one photo that was used on the Trust's website, which is several times larger than Plaintiff's and more representative of the image of the smiling, trusting, relaxed, mature couple that the

Trust wished to convey, was purchased February 1, 2011 by the Trust from CORBIS - a leading provider of photos and video for websites and other media and a very large viable competitor of the Plaintiff. The cost of the photo was $35.00. Please see attached invoice in **Exhibit B** and CORBIS' pricing schedule in **Exhibit C**. The Court will note that the maximum cost for a photo from CORBIS is $475 (four hundred seventy five dollars) per image. The Court will also please note that images are commonly priced based upon the size of the image. Plaintiff's images were the smallest size normally licensed for use on the Internet, which are priced as low as $15.00 (fifteen dollars). Therefore, this lawsuit is about a competitive royalty/licensing fee of as little as $45.00 (forty-five dollars) to a maximum of $1425.00 (fourteen hundred twenty-five dollars) for all three images. This action could normally be resolved b y a simple phone call or in a California Small Claims Court. However, Defendants believe the real reason for this lawsuit to be filed in New York Federal Southern District Court with a Jury demand is Malicious Prosecution, so that Plaintiff and Plaintiff's attorneys can unjustly enrich themselves by being awarded massive fees for this legal action, combined with maximizing the difficulty and extraordinarily high and financially devastating cost of Defendants defending themselves against this unwarranted and destructive lawsuit. Even more troubling is Plaintiff and Plaintiff's attorney who are wasting

the valuable time of the Court over what should be a Small Claims case in California with a value of less than $1425.00.

Please see Defendant's **Exhibit D, Exhibit E and Exhibit F** which contain true images provided by Plaintiff's attorney in an email on July 12, 2011 of the 'Only Websites, Inc.' Development website at the point in time where Plaintiff's attorney contacted Defendants, at the bottom it clearly states: 'Web Design by Only Websites, Inc.' Alongside Defendant's **Exhibit D , E and F** are **Exhibit D-1, Exhibit E-1 and Exhibit F- 1** of Plaintiff's complaint to the New York Court. Please note that Defendants had a consultant examine the documents submitted to the Court by Plaintiff and Plaintiff's attorney under a 30 x loupe and found they have **intentionally** made every effort to edit, smear, erase, distort, reduce and blur the "Web Design by Only Websites, Inc." statement at the bottom of **every** page of the 'Only Websites, Inc.' development website that was filed with this complaint so as to try to **deceive** and confuse the Court as to who was the owner of the site at that time and who is legally responsible for mistakenly displaying Plaintiff's images on the Internet.

The Court can plainly see that the copyright, ownership and design attribute can be found on every web page of the development website. It is assumed by the Defendants that since Plaintiff and Plaintiff's counsel knows how to use email, and that they know how to use the Internet, that they also know how to

read a web page as they have a website for their own firm. Plainly, Plaintiff's counsel has made every effort to misrepresent the facts throughout its complaint and to intentionally deceive the Court.

After the Trust took ownership of the website in September 2011, 60+ (sixty) days after first notice from Plaintiff's attorney (and 60+ days after the removal of said images by 'Only Websites, Inc.' from their site), the Trust's website was operational for about 75 days in 2011. The Trust's website was then removed from the Internet in December 2011. The Trust's website was briefly activated for approximately 15 days in March 2012 and then was taken off the Internet again and has remained off the Internet since. None of the Plaintiff's images were displayed on the purchased final version of the Trust's website.

Defendants assert that they were chosen for malicious prosecution by Plaintiff and Plaintiff's counsel for the sole purpose of using the legal system and a remote venue to extort money from Defendants, whom they mistakenly believe have substantial assets, verses pursuing compensation from 'Only Websites, Inc.' a Utah company, which had full ownership and control over their Development website at the time of 'Only Websites Inc.'s' infraction. Further, that Plaintiff has brought this action in New York for the sole purpose of maximizing the expense, inconvenience and financial harm to Defendants to answer this frivolous compliant and to further burden Defendants with the cost of finding and retaining an attorney

in New York to represent them. The fact is **both** the **Plaintiff** and the **Defendants are** based **in California**, which is the appropriate jurisdiction for the complaint to be heard. At the very least, this case should be transferred to the Central District of California where Defendant's industry experts, the Plaintiff and the Defendants all reside.

The Defendants ask the Court to dismiss this complaint with prejudice on the following basis:

**JURISDICTION.**

The complaint is most appropriately heard in the Central District of California based on the location of the **Plaintiff**, **Defendant** and **Defendant's Internet Industry experts**. Therefore a motion under 28 U.S.C. 1404 (a) and F.R.C.P. Rule 12 (b)(2) and F.R.C.P. Rule 12(b)(3) to move this case to the Central District of California is made.

**WRONG DEFENDANTS.**

The complaint should be dismissed with prejudice because Plaintiff should be suing the party responsible for the ownership, control and mistaken use of Plaintiff's images 'Only Websites, Inc.' at the time of the infraction and not the Trust or the Trust's Managing Trustee who had no ownership, no responsibility, no

knowledge, gave no authorization to use and had no control over the public viewing of Plaintiff's images.

**LACK OF DEFENDANTS.**

**A. DEFENDANT ATHERTON TRUST-A DELAWARE STATUTORY TRUST**

The Trust was dissolved on April 5, 2012.

**B. DEFENDANT KAST.**

Attached in Exhibit E is the Delaware Statute that governs Delaware Domestic Statutory Trusts. The Delaware Statute which governs the Trust's Liability and the liability of Trustee's under Title 12. Subchapter 1. Domestic Statutory Trusts is found in §3803 Liability of Beneficial Owners and Trustees. The wording of the statute is found below for the Court's convenience.

(a) Except to the extent otherwise provided in the governing instrument of the statutory trust, the beneficial owners shall be entitled to the same limitation of personal liability extended to stockholders of private corporations for profit organized under the general corporation law of the State.

b) Except to the extent otherwise provided in the governing instrument of a statutory trust, a trustee, when acting in such capacity, shall not be personally liable to any person other than the statutory trust or a beneficial owner for any act, omission or obligation of the statutory trust or any trustee thereof.

(c) Except to the extent otherwise provided in the governing instrument of a statutory trust, an officer, employee, manager or other person acting pursuant to § 3806(b)(7) of this title, when acting in such capacity, shall not be personally liable to any person other than the statutory trust or a beneficial owner for any act, omission or obligation of the statutory trust or any trustee thereof.

(d) No obligation of a beneficial owner or trustee of a statutory trust to the statutory trust arising under the governing instrument or a separate agreement in writing, and no note, instrument or other writing evidencing any such obligation of a beneficial owner or trustee, shall be subject to the defense of usury, and no beneficial owner or trustee shall interpose the defense of usury with respect to any such obligation in any action. For a complete copy of the Delaware Statute which governs the Trust and its Trustee please see Exhibit D.

*66 Del. Laws, c. 279, § 1; 67 Del. Laws, c. 297, §§ 1, 2; 68 Del. Laws, c. 404, § 5; 69 Del. Laws, c. 265, § 1; 70 Del. Laws, c. 548, § 3;73 Del. Laws, c. 329, § 1.*

## II.

## LEGAL ARGUMENT

### A. THE COURT LACKS PERSONAL JURISDICTION OVER THESE DEFENDANTS

Defendants submit they do not have sufficient minimum contacts with the State of New York for New York to exercise personal jurisdiction over these Defendants. Plaintiff has not shown that any loss can be attributed from the public in New York viewing Plaintiff's images. In *Manley v. Air Canada*, 753 F. Supp.2d 551, 338 n. 2 (E.D.N.C.2010) the Court held that personal jurisdiction could be based on internet sales, but the sales would have to be more than *de minimus*. As no sales of the Trust's services took place in New York in 2008, 2009, 2010, 2011 or 2012, no revenue was earned by the Trust in New York, therefore there is no jurisdiction. Further, Defendants submit that under 28 U.S.C. 28 1404(a) which reads: ***"For the convenience of parties and witnesses, in the interest of justice, a district Court may transfer any civil action to any other district or division where it might have been brought."*** Therefore, it is appropriate under 28 U.S.C. 1404 (a) to transfer this case to the Central District Court in California. The only party

benefiting by the convenience of a New York Jurisdiction are the Plaintiff's Attorneys.

As stated in Plaintiffs Jurisdiction and Venue, Plaintiff has as its primary place of business and residence **Petaluma, California.**

## B. THE COURT SHOULD TRANSFER THIS MATTER TO THE CENTRAL DISTRICT OF CALIFORNIA FOR CONVENIENCE

In order to defend this action, Defendants would need to call as a witness the website developer who is responsible for this action, who resides in Utah, as well as potential internet development expert witnesses who reside in California.

- The Plaintiff's business and residence is in California.
- The Defendants business and residence is in California.
- There have not been any sales, marketing, clients or revenue generated from the State of New York since 2006.
- The Defendants business records are maintained in California, which may also require a custodian of those records to testify.

In *Piper Aircraft Company v. Reyno,* (1981) 454 U.S. 235, 102 S. Ct. 252 a suit for strict liability following an airplane accident was filed in the United States

District Court in California for an accident that happened in Scotland and with the airplane manufacturer being a Pennsylvania entity. The District Court transferred the case from the Central District of California to the United States District Court for the Middle District of Pennsylvania pursuant to 28 U.S.C. §1404(a).

In determining whether to grant a motion to dismiss an action on grounds of *forum non conveniens* the Court engages in a balancing test outlined in *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 67 S. Ct. 839 and its companion case, *Koster v. Lumbermens Mut. Cas. Co.,* 330 U.S. 518, 67 S. Ct. 828, 91 L.Ed. 1067 (1947).

In those decisions, the Court stated that when an alternative forum has jurisdiction to hear the case, and when trial in the chosen forum would "establish ... oppressiveness and vexation to a defendant ... out of all proportion to plaintiff's convenience," or when the "chosen forum is inappropriate because of considerations affecting the Court's own administrative and legal problems," the Court may, in the exercise of its sound discretion, dismiss the case. [*Koster, supra,* at 524, 67 S.Ct., at 831-832.]

To guide trial Court discretion, the Court provided a list of "private interest factors" affecting the convenience of the litigants, and a list of "public interest factors" affecting the convenience of the forum. [*Gilbert, supra,* 330 U.S. at 508-509, 67 S.Ct., at 843]

The factors pertaining to the private interests of the litigants included the "relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of the case easy, expeditious and inexpensive." [*Gilbert, supra,* 330 U.S. at 508-509, 67 S.Ct., at 843]

The public factors bearing on the question included the administrative difficulties flowing from Court congestion; the "local interest in having localized controversies decided at home"; the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law; and the unfairness of burdening citizens in an unrelated forum with jury duty. [*Id.,* at 509, 67 S.Ct., at 843.42 U.S.C.]

The facts in this case weigh in favor of dismissal with prejudice, or in the very least should be transferred to California on grounds of *forum non conveniens.* The Defendants have limited resources and California-based Plaintiff is apparently exploiting that fact by bringing this action in New York where the Defendants would have to hire a local attorney without any means of referrals or ability to properly interview any such attorney and ascertain his/her competency. Allowing this matter to continue in New York would establish oppressiveness and vexation

to these defendants out of all proportion to plaintiff's attorney's convenience. The chosen forum is further inappropriate because of considerations affecting the Court's own administrative and legal problems and would greatly affect the defendant's ability to call witnesses in their defense.

## C. DISMISSAL WITH PREJUDICE

Defendants ask the Court to dismiss Plaintiff's complaint with prejudice due to Defendant's:

- Lack of Ownership of the website at the time the Plaintiff's images were displayed
- Lack of Control over the use and display of Plaintiff's images
- Lack of Responsibility for the limited public viewing of Plaintiff's images on the Internet.
- Lack of Defendant's Permission being given to 'Only Websites, Inc.' to use and display Plaintiff's images on the Internet
- Lack of an on- going business, i.e. the Trust is no longer in business
- Lack of a personal Defendant, i.e. Defendant Kast has Delaware Statutory protection
- Lack of honesty by Plaintiff and Plaintiff's attorney in representations to the Court in their complaint as to the true ownership of the

development website at the time of the mistaken posting of the Plaintiff's images on the Internet.

- Lack of Honesty by Plaintiff and Plaintiff's Attorneys to the Court regarding the cooperation of the Defendants
- Lack of Honesty as to the Defendant Atherton Trust-A Delaware Statutory Trust's legal charter.
- Lack of Honesty by Plaintiff and Plaintiff's Attorneys to the Court regarding the true exhibit images, as the exhibit images provided to the Court for evidence were edited to deceive the Court
- Lack of Honesty by Plaintiff and Plaintiff's Attorneys as to the ties the Trust has to New York – the Trust has not had any ties to New York during the time the website was developed or afterwards, has not had any meetings, employees, advertising, or otherwise in New York State.

Wherefore, Defendants Atherton Trust-A Delaware Statutory Trust and Kraig Kast former Managing Trustee of Atherton Trust – A Delaware Statutory Trust acting pro se respectfully pray for dismissal with prejudice of the complaint. Failing to receive such dismissal with prejudice, Defendants ask for a change of venue under 28 U.S.C. 1404 (a) and ask the Court for a:

1. Permanent injunction against Plaintiff and Plaintiff's attorneys to prohibit distribution, by any means, their allegations related to this frivolous and damaging complaint.

2. Dismissal with prejudice of this complaint and refusal of all claims for damages and compensation by Plaintiff's and Plaintiff's attorneys based on the fact that:

   A. Defendant Atherton Trust-A Delaware Statutory Trust ceased doing business on April 5, 2012

   B. Defendant Kast who was the Managing Trustee of a now defunct business has a statutory limitation of liability under the Delaware statutes, previously referenced

   D. Defendants never had ownership of or control over nor gave permission for 'Only Websites, Inc.' to use or make Plaintiff's images public and that Defendant's received no benefit monetarily or otherwise from the public viewing of Defendant's development website.

3. If the Court believes that there is still sufficient justification to proceed to trial given the status of the Defendants, location of the Plaintiff and Defendants and information provided herein then Defendant's request a change of venue to Central District Court in California under 28 U.S.C. 1404(a).

4. If the Court believes that Defendants have been damaged by the Plaintiff and Plaintiff's attorney and their malicious prosecution and defamation, the Defendants request appropriate action be taken by the Court against said Plaintiff and Plaintiff's attorneys.

Respectfully submitted.

Dated: May 16, 2012

By:
Atherton Trust-A Delaware Statutory Trust,
pro se Defendant
Post Office Box 2637
Rancho Santa Fe, CA 92067
(760) 751-7027

Kraig R. Kast, pro se Defendant
12155 Vista Terraza Court
Valley Center, CA 92082