Docket and File

THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 12-10-12

ERICKSON PRODDUCTIONS, INC
and JIM ERICKSON

*Plaintiffs*

v.

ATHERTON TRUST, KRAIG R.
KAST and ONLY WEBSITES, INC.

*Defendants*

No. 12-CV-1693-PGG

Hon. Paul G. Gardephe

Filed via USPS Express Mail

SUPPLIMENTAL MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT
KAST'S MOTION TO DISMISS

December 10, 2012

Kraig R. Kast
Pro Se Defendant
12155 Vista Terraza Court
Valley Center, California 92082
T: 760-751-7027
F: 760-751-7026
Kraigru@hotmail.com

FACTUAL BACKGROUND

Defendant Kraig R. Kast acting as the Trustee of Atherton Trust-A Delaware Statutory Trust chartered December 30, 2005 under the laws of the State of Delaware (see Defendants Exhibit A -State of Delaware Certificate and Trust By Laws), ("Trust") contacted Only Websites Inc. of American Fork, UT, a professional website developer, in December 2010 to build a website for the Trust. A price for Only Websites services and a timeline was agreed to between Only Websites and the Trust with work to begin in January 2011 and to be completed approximately 45 days later.

Only Websites asked the Trustee for examples of websites commonly used in the Trust's business segment which includes Banks, Stock Brokers, Real Estate Brokers and Commercial Property Managers, Care Managers and others. Discussions were held on the telephone and via email between Only Websites and the Trustee discussing common functional elements of the various websites. The functional elements relating to navigation are not proprietary and in fact are used on millions of websites around the world. Functional elements like links, navigation processes placement of written content and photographs are found on templates provided by Only Websites and millions of other website developers. From the base template a website is built by the developer and modified to meet the needs of individual clients. Most website developers are small companies with less than 30 employees, the exception is a company like Go Daddy, the world's largest web domain registration company, which has hundreds of millions of dollars in revenue and thousands of employees some of which are dedicated to website development/construction and support.

The trust's website was delayed many times due to personnel changes at Only Websites. In February the Trust selected a single photo to be placed on the home page of the Trust's website. This photo was licensed from CORBIS a provider of photos for the Internet and other media. The template

which was the basis of the Trust's website called for one photo to be placed on the home page. There was never a plan to place photos elsewhere on the Trust's website. This is supported by Plaintiff's Exhibit 6 wherein the Trustee asks Only Websites for guidance about the design based on the Only Websites templates and makes reference to the photo the Trust licensed from CORBIS. As is standard practice, the website developer asks their client for suggestions and edits as needed during development. The final stage is client approval of the look, feel, written and photographic content, and the operational aspects of the website. Once final approval is received from the client and the website is paid for in full, the ownership of the website is then transferred from the developer to the client, in this case the Trust.

In the middle of the development of the website the Trustee was contacted by Plaintiff's council on July 12, 2011 alleging that the Trust had used Plaintiff's images and demanded that the images be immediately removed. The Trustee was shocked that the Plaintiff's images appeared on the Only Website's development website and that the website was able to be viewed by the public. The Trust believed that the website was being confidentially developed by Only Websites, as a partially developed website would reflect badly on the Trust because links would not work, written content would have errors, etc. The Trust immediately emailed the Only Websites project manager and demanded that the Plaintiff's images be removed (see Defendant's Exhibit B) and Only Websites complied within 24 hours. Only Websites told the Trustee that their development website had not been "published" to any of the Internet search engines so the site could not have been found by the general public. The Trustee was told that the only way the Plaintiff's photos were found on their development website was by the Plaintiff using a 'spider' or 'crawler' software, most commonly from Google, which crawls the Internet looking for specific words or phrases and reports them back to the person using the crawler. These crawlers are most often used for pulling news stories off the web. In this case it appears the Plaintiff used a crawler to monitor his images on the Internet.

Therefore, the Plaintiff was not harmed by Only Websites mistakenly making the photos available on the Internet as the general public would not have found the website prior to Only Websites

publishing their website to the search engines in September 2011. Second, the photos would have been removed in the final stages of development once the error was discovered. Further, Trust did not own the website at the time that the alleged infraction occurred (See Defendant's Exhibit C -Credit Card statements showing when the website was purchased from Only Websites in September of 2011).

It is clear that Mr. Erickson could have contacted Only Websites and resolved this matter for a few hundred dollars which, according to Only Websites, would have been the normal licensing fee for the photos of that size. However, Mr. Erickson instead believing that he had struck it rich, hired a New York Law firm to sue the Trust (even though his residence and business as well as the Defendant's are in the state of California) rather than the owner, developer and creator of this website to extract through threat of litigation what he believed would be a huge settlement from the Trust. People who bring these actions are commonly known as copyright trolls; they seek to make more money from suing for copyright infringement than from actually selling photos and are swamping the Courts in the Internet era.

Seven months went by after first contact by the Plaintiff's counsel in July 2011 until the Trust was served with this lawsuit in March 2012. The Trust acquired ownership of the website in September 2011. The site continued to have operational problems and was only published to the Internet for two months in 2011 and a few weeks in 2012. The Trust's website did not have any of the Plaintiff's photos on the final purchased and published version of the website. The only photo that appeared on the website was the one that the Trust purchased for the home page in keeping with the original Only Websites Template. The photo was licensed from CORBIS for $150.

By January 2012, the Trust had completely lost confidence in Only Websites ability and after much difficulty transferred to hosting of the Trust's website to 'Go Daddy'.

I.  ARGUEMENT

A.

      Plaintiff has not provided the Court with any proof that Kraig Kast, Trustee of Atherton Trust-A Delaware Statutory Trust did anything improper or illegal related to the infringement of Plaintiff's copyrighted images. In fact, the evidence shows that the Trustee immediately sought to correct a mistake by  Only Websites, the  website owner and developer.  (Exhibit B).

B.

      Trustee is not knowledgeable in the development of websites and needed to hire a professional to do that work for the Trust.

C.

      Trustee had every reasonable expectation that the Trust's development website was confidential and protected by Only Websites from public view. Only Websites never disclosed that their development website was able to be viewed on the Internet while being created. Had this fact been known to the Trustee, the Trustee never would have allowed Only Websites to create the Trust's website.

D.

      Trust did not own the website at the time of the alleged infringement nor did it have any control over the website.

E.

Trustee did not have control over the programming, employees or the computer servers that provided access to the website. Only Websites Inc had that oversight and control, and had full ownership over the development website.

F.

Website developer, Only Websites, knew about the problem of not protecting website content on the Internet during development for 12 years (see Exhibit F) and failed, in this case, to protect the development website and the Trustee from poor public image, financial damage, infringement and all other complications related to their carelessness.

II.

A.

Plaintiff's counsel attempts to deceive the Court by claiming the Trust was not registered in California because a recorded fictitious name filing was made by an individual (Exhibit D Plaintiff's exhibit) which shows the Trust was registered by Kraig R. Kast ( underneath is printed "Trustee's name"). Once again Plaintiff's counsel has tried to deceive the Court. The fact is the San Diego County Clerk, after examining the Trust's charter, would not allow the Trust's name to be filed by the Trust and insisted that the Trustee had to record his name on the document - thus the reason for the change. Further, that the bank would not accept the fictitious name form which was required to open the account unless the document had the Trustee's name on the form as the Trustee had signature authority on the bank account. In either event, the Trust was created for Mr. Kast as the beneficiary and Mr. Kast is the Trustee. Mr. Kast was also recording his other licensed business entities like real estate brokerage which are not allowed to be recorded by a Trust.

B.

Plaintiff's counsel seeks to defame the Trustee and negatively influence the Court by evidencing a case brought by a vexatious litigant which has no bearing on this copyright lawsuit. The fact is Ms. Reinecker, Mr. Kast's ex-girlfriend who is angry about Mr. Kast's relationship with Ms. Baker, has filed over 32 lawsuits in the last 20 years and with only three exceptions has lost all of them. One of the suits she won was against her own father for hundreds of thousands of dollars and two others were against tenants for failure to pay rent. The facts are that Mr. Russell, the attorney for Ms. Reinecker has been previously suspended by the California Bar and was again under investigation by the Bar in 2012 (Exhibit E). Further, that Ms. Reinecker has a judgment for slander, libel and defamation against her from a previous lawsuit, Badt v. Reinecker, California Superior Court for Los Angeles, against a licensed professional and her sister Kriste Graves has a judgment against her for contract fraud in Federal court (Badt v. Graves-Central District Court-Los Angeles) in a related action. Ms. Reinecker has not had a job since 2006 and lives off of the spoils from threatening lawsuits against innocent people, which is where there is a similarity to this case. There has been no judgment in the referenced case of Reinecker v. Kast. Ms. Reinecker is being sued for slander, libel, identity theft and defamation in a related action. Ms. Reinecker is also going to be sued for malicious prosecution within the next few months. It is important to note that Ms. Reinecker and Mr. Russell were sanctioned by the Court for their activities in connection with this case and that Ms. Baker, the Trust, the Trustee and Mr. Kast's insurance business were dropped from the case during pre-trial meetings with the judge.

C.

No matter how many ways Plaintiff's counsel has tried to re-write Delaware Law, the fact is there is a clear Delaware Statute that governs the creation and operation of a Delaware Statutory Trust. The law clearly states the Trustee's obligations and protections under the law in section 3803.

Plaintiff's counsel tries to stretch corporate law to include a Statutory Trust. The Statutory Trust is clearly not a corporation. Even if the Court broadly interprets Delaware's Statutory Trust law so as to be similar to corporate law, for 3803 to become invalid, the Plaintiff would have to clearly show by evidence not by character assignation, that the Trustee must "actively and knowingly cause(s) the trademark infringement and that he is personally responsible. Specifically, that a corporate officer who directs, controls, ratifies, participates in or is the moving force behind the infringing activity, is personally liable for such infringement without regard to piercing the corporate veil".

In this case, the Trustee had no direct supervision over the employees of Only Websites, nor control of or ownership of the development website. The Trustee had no management control over the employees of Only Websites ( no control over work schedules, pay, benefits, daily performance). Defendant Kast had no control over the Only Websites-owned servers on which the development website was stored and no control over whether the development website was displayed at any given time on the Internet. The only party that had that ownership and control was Only Websites. Further, Plaintiff's counsel has not provided the Court with evidence that the Trustee infringed, published or stood to gain in any way from the use of the Plaintiff's images. Nor has Plaintiff's counsel been able to demonstrate that his client has been harmed in any way by the mistaken publication of the Plaintiff's images on the development website, owned entirely by Only Websites.

In fact, the opposite is true. The Trust has been damaged both financially and operationally by this frivolous lawsuit. The Trust has lost its only client and the revenue it derived from that client. The Trust's name has been forever damaged by the Plaintiff's unfounded claims of infringement.  The Trust was officially dissolved on April 5, 2012.

D.

The Trustee violated no Delaware laws related to a Trustee's responsibility to act in the best interests of the Trust or the beneficiary, i.e. himself.

E.

The Delaware Statutory Trust Law identifies the legal structure as being created for the benefit of a single beneficiary (see Exhibit A). In this case Mr. Kast was both the Trustee and the sole beneficiary of Atherton Trust-A Delaware Statutory Trust.

E.

Mr. Kast has not attempted hide the registration of a domain name for California Trust Co. with Go Daddy or to show  he is associated with the California Trust Co. name on Linked In. Although Mr. Kast has no intention of activating California Trust Co. at this time it is prudent to have such an entity if Mr. Kast decides to offer any type of fiduciary services in the future. After building a very good reputation Atherton Trust is no longer viable due to the Plaintiff's allegations; even if proven not to be true the Trust is tainted. Because Ms. Baker has an active online jewelry business hosted on  Go Daddy's servers and uses Go Daddy's support more than Mr. Kast it is her email address that receives all emails from Go Daddy. Again Plaintiff's counsel is attempting to portray something nefarious where it does not exist so as to damage Mr. Kast's reputation and to unjustly influence the Court's opinion against the Trustee.

F.

Prior to this litigation, Mr. Kast had a spotless reputation. After serving as a senior executive in Fortune 1000 companies for over 25 years, Mr. Kast began contributing his knowledge of trusts, estate planning and other investments and care services to the Wall Street Journal, Inc. Magazine, The Financial Times of London, the Economist and other prestigious publications. In 2007, Mr. Kast was chosen as one six leaders of the multi-family housing industry. Mr. Kast is also the Treasurer of a local non-profit community service organization.

For several years Mr. Kast has spoken out about how financial institutions have been taking advantage of their clients. He has been a vocal advocate for investment firms to be held to the same fiduciary standards that a licensed fiduciary, like himself, is held to.  His published criticisms have made him a lightning rod for large powerful financial institutions to try to destroy him and the Trust company either directly or indirectly.

G.

The Plaintiff has not presented the Court with any evidence that the Trust or Mr. Kast, as the Trustee or as an individual, did any business in the State of New York after 2006.  In 2006, the Trustee provided advisory services via telephone to residents of New York.  Plaintiff's counsel has provided no evidence from a Trust client, New York state licensing institution, taxing authority, hotel, airline, credit card statement or anything else to substantiate his claim. Neither the Trust nor the Trustee, or any employee of the Trust has done any business in, or visited the State of New York in the last five years. Therefore, the burden of proof is on the Plaintiff to prove that the Trust or Trustee did business in, has an office in, or even visited the State of New York during 2007 to 2012.

H.

Defendant Kast has provided copies of credit card statements from September 2011 and October 2011 which show that the final payment and acceptance of the Trust's website took place on September 23, 2011 and that no more payments were made to Only Websites (Exhibit C).

III. CONCLUSION

Plaintiff has provided no proof to the Court that the Trustee acted in any improper or illegal way.

Further the Trust was created under the laws of the State of Delaware and remained in good standing until its dissolution. That theTrust was organized for the benefit of Mr. Kast as specified by the laws of the State of Delaware and therefore as both Trustee and the beneficiary, Mr. Kast was authorized to sign documents related to the name of the Trust, opening bank accounts, and conducting normal business on behalf of the Trust. The Trust is not by law a corporation and should not be judged as a corporation., it should be judged as its own distinct legal entity.

For the foregoing reasons, the Court should approve the Defendant Trustee's motion to dismiss with prejudice this lawsuit against the Trustee and Mr. Kast personally.

DEFENDANT'S
EXHIBIT A

01/24/2006  11:39    3027345164                                    PAGE  02

# STATE *of* DELAWARE
## CERTIFICATE *of* TRUST

This Certificate of Trust is filed in accordance with the provisions of the
Delaware Statutory Trust Act (Title 12 of the Delaware Code, Section 3801 et seq.) and
sets forth the following:

- **First:** The name of the trust is ATHERTON TRUST - A DELAWARE STATUTORY TRUST

- **Second:** The name and address of the (trustee) or the Registered Agent is (circle which one applies as meeting the requirements of subsection 3807): KARIN R. SLACUM 15 W. LOOCKERMAN ST., CITY OF DOVER COUNTY OF KENT, ZIP CODE 19904.

- **Third:** (Use this paragraph only if the company is to have a specific effective date: "This Certificate shall be effective DECEMBER 30, 2005 .)

- **Fourth:** (Insert any other information the trustees determine to include therein.)

_____
_____
_____
_____
_____

By _____
                Trustee(s)

Name: KARIN R. SLACUM
              Typed or Printed

*State of Delaware*
*Secretary of State*
*Division of Corporations*
*Delivered 12:03 PM 12/30/2005*
*FILED 12:03 PM 12/30/2005*
*SRV 051078211 - 4098872 FILE*

# TRUST AGREEMENT

## OF ATHERTON TRUST-
## A DELAWARE STATUTORY TRUST

This TRUST AGREEMENT of ATHERTON TRUST, a Delaware Statutory Trust (the "Trust"), dated as of March 1, 2006, with effect as of December 30, 2005, is made between Karin R. Slacum, as the Delaware resident trustee (in such capacity, the "Delaware Trustee") and Kraig R. Kast, as the managing trustee (in such capacity, the "Managing Trustee" and together with the Delaware Trustee, the "Trustees"), and any other person who subsequently signs this agreement (the "Trust Agreement") and becomes a party to it.

### RECITALS:

WHEREAS, this Trust was formed on December 30, 2005 as a "statutory trust" in accordance with Chapter 38 of Title 12 of the Delaware Code (the "Act") by the filing of a Certificate of Trust with the Secretary of State of the State of Delaware pursuant to Section 3810 of Title 12 of the Act;

WHEREAS, the Trustees intend that this Trust Agreement constitute the "governing instrument" of the Trust (as such term is defined in Section 3801(f) of the Act); and

WHEREAS, the Trust is a single-beneficiary trust with the Beneficiary (as hereinafter defined) being treated as the sole owner of the Trust Property (as hereinafter defined).

### AGREEMENTS:

NOW, THEREFORE, in consideration of the premises and the mutual agreements herein contained and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereby agree as follows:

### ARTICLE I
### DEFINITIONS

For all purposes of this Trust Agreement, the capitalized terms set forth below shall have the following meanings:

"Act" shall have the meaning given to such term in the Recitals.

"Advisory Board" shall have the meaning given to such term in Section 6.03.

"Beneficiary" shall mean Kraig R. Kast.

"Code" shall mean the Internal Revenue Code of 1986, as amended from time to time.

"Delaware Trustee" shall have the meaning given to such term in the Preamble.

"Indemnified Person" shall have the meaning given to such term in Article VII.

"Managing Trustee" shall have the meaning given to such term in the Preamble.

"Notices" shall have the meaning given to such term in Section 10.02.

"Officers" shall have the meaning given to such term in Section 6.04.

"Person" shall mean a natural person, corporation, limited partnership, general partnership, limited liability company, joint stock company, joint venture, association, company, trust, bank trust company, land trust, business trust, statutory trust or other organization, whether or not a legal entity, and a government or agency or political subdivision thereof.

"Regulations" shall mean U.S. Treasury Regulations promulgated under the Code.

"Section" shall mean a section in this Trust Agreement, unless otherwise modified.

"Trust" shall have the meaning given to such term in the Preamble.

"Trust Property" shall mean all right, title and interest of the Trust in and to any property contributed to the Trust by the Beneficiary or otherwise owned by the Trust.

"Trustees" shall have the meaning given to such term in the Preamble.

**ARTICLE II**
**FORMATION OF TRUST**

2.01   Name.  The Trust created hereby shall be known as Atherton Trust.

2.02   Principal Place of Business.  The principal place of business of the Trust shall be at such place as the Managing Trustee shall designate from time to time by notice to the Beneficiary, which need not be in the State of Delaware.  The initial principal place of business of the Trust shall be 969 Desoto Lane, Suite 710, Foster City, California, 94404, USA.

2.03   Purposes.  The purposes of the Trust are to:  (a) engage in the business of wealth management, including the provision of consulting, investing, property management, analysis, valuations, brokerage and other advisory services related thereto; and (b) take any other lawful act or engage in any other lawful activity for which a statutory trust may be organized under the Act.

2.04   Declaration of Trust by Trustees.  The Trustees hereby declare that they will hold the Trust Property upon the terms and conditions herein for the benefit of the Beneficiary.  The Trust shall constitute a "statutory trust" under Chapter 38 of Title 12 of the Act.  It is the intention of the parties hereto that the Trust shall constitute a "Disregarded Entity" pursuant to Regulation §301.7701-3(b)(1)(ii) for federal and state

income tax purposes.  Beneficiary shall be treated for federal income tax purposes as if he holds a direct ownership interest in the Trust Property.

## ARTICLE III
## TRANSFER OF INTERESTS

3.01   <u>Restrictions on Transfer</u>.  It is intended that this Trust have only one Beneficiary.  However, subject to compliance with applicable securities laws and any transfer restrictions set forth in this Trust Agreement, all or any portion of the interest in the Trust Property of the Beneficiary may be assigned or transferred.  Such a Transfer will require amendment of this Trust Agreement.

3.02   <u>Conditions to Admission of New Beneficiary</u>.  Any assignee or transferee of an interest in the Trust Property of the Beneficiary shall only become an Beneficiary upon written acceptance and adoption of this Trust Agreement, as amended.

## ARTICLE IV
## DISTRIBUTIONS

4.01   <u>Payments From Trust Property Only</u>.  All payments to be made by the Trust under this Trust Agreement shall be from the Trust Property.

4.02   <u>Distributions in General</u>.  The Managing Trustee may at any time cause to be distributed to the Beneficiary cash and other assets from the Trust Property in such form and in such amounts as the Managing Trustee may determine in his sole discretion.

## ARTICLE V
## RIGHTS AND OBLIGATIONS OF OWNERS

<u>No Legal Title to Trust Property in the Beneficiary, Etc.</u>  Legal title to the Trust Property shall be held by the Trust, and the Beneficiary shall not have legal title to the Trust Property.  Neither the bankruptcy, death or other incapacity of the Beneficiary nor the transfer, by operation of law or otherwise, of any right, title or interest of the Beneficiary in and to the Trust Property or hereunder shall terminate this Trust Agreement.  Except as expressly set forth herein, the Beneficiary shall not be liable for any liabilities or obligations of the Trust or the Trustees or for the performance of this Trust Agreement.

## ARTICLE VI
## TRUSTEES AND TRUST MANAGEMENT

6.01   <u>Acceptance of Trust and Duties</u>.  The Trustees accept the Trust hereby created and agree to perform their duties as so provided.

6.02   <u>Duties of the Trustees</u>.

(a)   The Trustees shall only have the duties and obligations expressly provided in this Trust Agreement.

3

(b)     Except to the extent specifically provided in <u>Section 6.02(c)</u>, and to the effect that specific duties and obligations are those of the Delaware Trustee, and notwithstanding any other provision of this Trust Agreement, all the duties and obligations of the Trustees or of any of them under this Agreement shall be solely the duties and obligations of the Managing Trustee.  Decisions of the Managing Trustee within its scope of authority shall be binding upon the Trust and the Beneficiary.  Except as reserved to the Delaware Trustee pursuant to <u>Section 6.02(c)</u>, or by nonwaivable provisions of applicable law, the Managing Trustee shall have full and complete authority, power and discretion (subject to the authority of the Managing Trustee to delegate powers and duties to the Officers) to manage and control the business, affairs and properties of the Trust, to make all decisions regarding the business, affairs and properties of the Trust and to perform any and all other acts and activities customary or incident to the management of the Trust's business, including, without limitation:

(i)     acquiring by purchase, lease or otherwise, any real or personal property, tangible or intangible;

(ii)     selling, disposing, trading, or exchanging Trust Property in the ordinary course of the Trust's business;

(iii)     authorizing agreements and contracts, including such agreements and contracts as are necessary to establish employee benefit plans such as a deferred compensation plan for the benefit of Trust Officers and employees, and giving receipts, releases, and discharges;

(iv)     appointing Officers and employees of the Trust;

(v)     borrowing money for and on behalf of the Trust;

(vi)     purchasing liability and other insurance to protect the Trust's properties and business;

(vii)     making any and all expenditures which the Managing Trustee, in its sole discretion, deem necessary or appropriate in connection with the management of the affairs of the Trust and the carrying out of its obligations and responsibilities under this Trust Agreement, including, all legal, accounting and other related expenses incurred in connection with the organization and financing and operation of the Trust;

(viii)     entering into any kind of activity necessary to, in connection with, or incidental to, the accomplishment of the purposes of the Trust, including, without limitation, forming and sponsoring investment vehicles to facilitate client investments in fractional interests in real estate;

(ix)     directly or indirectly declaring or making any distributions to Beneficiary;

4

(x)    directly or indirectly redeeming, purchasing or otherwise acquiring any interests in the Trust Property or other equity securities issued by the Trust;

(xi)    authorizing, issuing or entering into any agreement providing for the issuance (contingent or otherwise) of (A) any notes or debt securities containing equity features (including, any notes or debt securities convertible into or exchangeable for equity securities, issued in connection with the issuance of equity securities or containing profit participation features), or (B) any interests in the Trust Property or other equity securities (or any securities convertible into or exchangeable for any interests in the Trust Property or other equity securities); and

(xii)    directing or delegating any Officer, employee or other Person to take all actions and execute all documents or instruments as are necessary to carry out the intentions and purposes of the above duties and powers.

(c)    The Delaware Trustee is appointed to serve as the trustee of the Trust in the State of Delaware for the purpose of satisfying the requirement of Section 3807(a) of the Delaware Statutory Trust Act that the Trust have at least one trustee with a principal place of business in Delaware.  It is understood and agreed by the parties hereto that the Delaware Trustee shall have none of the duties or liabilities of the Managing Trustee.  The duties of the Delaware Trustee shall be limited to (i) accepting legal process served on the Trust in the State of Delaware, (ii) the execution of any certificates required to be filed with the Delaware Secretary of State which the Delaware Trustee is required to execute under Section 3811 of the Delaware Statutory Trust Act, and (iii) any other duties specifically allocated to the Delaware Trustee in the Trust Agreement.  To the extent that, at law or in equity, the Delaware Trustee has duties (including fiduciary duties) and liabilities relating thereto to the Trust or the Beneficiary, it is hereby understood and agreed by the other parties hereto that such duties and liabilities are replaced by the duties and liabilities of the Delaware Trustee expressly set forth in this Trust Agreement.

(d)    Except as provided in Sections 6.02(b) and 6.02(c) above, the Managing Trustee is hereby authorized and directed to enter into any agreement permitted or directed by this Trust Agreement without the consent or signature of the Delaware Trustee.  The Delaware Trustee is authorized and directed to enter into such other documents and take such other actions as any Managing Trustee shall specifically direct in written instructions delivered to the Delaware Trustee; *provided, however,* that the Delaware Trustee will take such action merely in a ministerial nondiscretionary capacity, as directed by the Managing Trustee, and any such action shall not subject the Delaware Trustee to any liability, and *provided further, however,* that the Delaware Trustee shall not be required to take any action if the Delaware Trustee shall determine, or shall be advised by counsel, that such action is likely to result in personal liability or is contrary to applicable law or any agreement to which the Delaware Trustee is a party.

6.03    Advisory Board.  The Trust shall have an Advisory Board (the "Advisory Board").  The role of the Advisory Board is to provide the Trust, the Managing Trustee and/or the Officers advice and counsel concerning the business and affairs of the Trust.  The Advisory Board shall consist of such number of persons as the Managing Trustee

5

may from time to time determine, and shall be composed of such persons as the Managing Trustee may determine in his or her sole discretion. The Advisory Board, and members thereof, shall have no authority to bind the Trust or act on behalf of Trust, unless otherwise expressly authorized in writing by the Managing Trustee.

6.04    Officers; Duties of Officers.  The officers of the Trust (the "Officers") shall consist of such officers, with such duties and powers, as the Managing Trustee may determine. An Officer shall remain in office unless and until removed by the Managing Trustee (with or without cause) or his or her resignation, death or incapacity. Designation of an Officer shall not, of itself, create any contractual or employment rights.

6.05    Books and Records.  The Managing Trustee shall keep customary and appropriate books and records relating to the Trust and the Trust Property.  The Managing Trustee shall maintain separate books and records for the Beneficiary's interest in the Trust Property and shall provide reports of income and expenses to the Beneficiary as necessary for such Beneficiary to prepare his/her income tax returns regarding the Trust Property.

6.06    Limitation on Fiduciary Duties of Trustees, Members of the Advisory Board and Officers.  Consistent with Sections 3803(b) and 3806(c)(2) of the Act, the duties and liabilities of the Trustees, members of the Advisory Board and Officers to the Trust, and the Beneficiary pursuant to this Trust Agreement are expressly limited as follows:

(a)    The Beneficiary hereby waive(s) both (A) the fiduciary duty, including the duty of care and the duty of loyalty, if any, of the Trustees, members of the Advisory Board or Officers owed to the Trust and/or its Beneficiary and (B) any claim or cause of action against the Trustees, members of the Board of Advisors or Officers for any breach of fiduciary duty owed to the Trust or the Beneficiary by any such Person.

(b)    The Beneficiary hereby acknowledge(s) and agree(s) that the Trustees and members of the Advisory Board engage in business activities other than acting as Trustees or members of the Advisory Board hereunder, and the Beneficiary hereby waives any claim or cause of action against any Trustee or members of the Advisory Board as result of any potential or actual conflict of interest arising as a result of any such business activity.

6.07    Not Acting in Individual Capacity.  Except as otherwise provided in this Article VI, the Trustees act solely as Trustees hereunder and not in their individual capacity, and all Persons other than the Beneficiary having any claim against the Trustees by reason of the transactions contemplated hereby shall look only to the Trust Property for payment or satisfaction thereof.

6.08    Reliance.  The Trustees shall not be liable to anyone for relying on any signature, instrument, notice, resolution, request, consent, order, certificate, report, opinion, bond or other document or paper believed by them to be genuine and signed by the proper parties. The Trustees may accept a copy of a resolution of the board of directors or other governing body of any corporate party, certified by the secretary or a senior officer thereof, as conclusive evidence that such resolution has been duly

6

adopted by such body and that the same is in full force and effect. As to any fact or matter, the manner of ascertainment of which is not specifically prescribed herein, the Trustees may for all purposes hereof rely on an officer's certificate of the relevant Person (if not an individual) as to such fact or matter, and such certificate shall constitute full protection to the Trustees for any action taken, suffered or omitted by it in good faith in reliance thereon.

6.09   Advice of Counsel.   In the administration and interpretation of the Trust, the Trustees may  perform any of their powers and duties, directly or through agents or attorneys and may consult with counsel, accountants and other skilled Persons selected and employed by them.  The Trustees shall not be liable for anything done or omitted in good faith in accordance with the advice or opinion within the scope of competence of any such counsel, accountant or other skilled Persons selected with due care.

6.10   Compensation and Expenses.   The Delaware Trustee shall receive as compensation for its services an initial fee, monthly fees and document execution fees as agreed to by the Trustees in a separate agreement.  The Managing Trustee shall serve without compensation.  The Trustees shall be entitled to be reimbursed for their reasonable expenses hereunder.  The Managing Trustee may determine in his or her sole discretion whether, and to what extent, members of the Advisory Board are entitled to compensation and/or reimbursement of expenses.

### ARTICLE VII
### INDEMNIFICATION

In the absence of fraud, gross negligence, willful violation of this Trust Agreement or other willful misconduct by an Indemnified Person, the Trust agrees to indemnify the Trustees, members of the Advisory Board, Officers and employees of the Trust in their individual capacity (the person entitled to indemnification hereunder, is referred to as an "Indemnified Person"), from and against, any and all liabilities, obligations, losses, damages, taxes, claims, actions, suits, costs, expenses and disbursements including reasonable legal fees and expenses which may be imposed on, incurred by or asserted at any time against the Indemnified Person in their individual capacity which relate to or arise out of the Trust or the management of the Trust Property.  The indemnities contained in this Article VII shall apply to any permitted successors or assigns of the Trust.

### ARTICLE VIII
### TERMINATION OF TRUST AGREEMENT

8.01   Termination in General.   The Trust shall dissolve and wind up in accordance with Section 3808 of the Act and the Beneficiary's share of the Trust Property shall, subject to Article IV hereof, be distributed to the Beneficiary upon the Beneficiary's approval of the termination and liquidation of the Trust and the Trust Property.

8.02   Distribution of Trust Property to Beneficiary.  The Managing Trustee shall terminate the Trust pursuant to Section 8.01 by dissolving and winding up the Trust in

accordance with Section 3808 of the Act and distributing to the Beneficiary, subject to <u>Article IV</u> hereof, the Beneficiary's share of the Trust Property.

8.03 <u>Certificate of Cancellation</u>. Upon the completion of winding up of the Trust, the Trustees shall cause a Certificate of Cancellation to be filed with the Delaware Secretary of State and thereupon the Trust and this Trust Agreement shall terminate.

## ARTICLE IX
## SUCCESSOR TRUSTEES

A Trustee or any successor may resign at any time by giving at least 60 days' prior written notice to the Beneficiary. The Beneficiary may at any time remove a Trustee for cause by written notice to such Trustee. Cause shall only result from the willful misconduct, fraud or gross negligence of the Trustee. Notwithstanding anything herein to the contrary, no resignation or removal of a Trustee shall be effective until a successor trustee has been appointed and such successor trustee has accepted its responsibilities, all as hereinafter provided. In case of the resignation, death, liquidation or removal of a trustee, the Beneficiary may appoint a successor by written instrument. The Trust shall not be terminated solely due to the death, liquidation, resignation or removal of any Trustee. If a successor trustee shall not have been appointed within 60 days after the giving of such notice, a trustee or the Beneficiary may apply to any court of competent jurisdiction in the United States to appoint a successor trustee to act until such time, if any, as a successor shall have been appointed as provided above. Any successor so appointed by such court shall immediately and without further act be superseded by any successor appointed as provided above within one year from the date of the appointment by such court. Any successor, however appointed, shall execute and deliver to its predecessor trustee (the Delaware Trustee, the Managing Trustee or a successor trustee, as the case may be) an instrument accepting such appointment, and thereupon such successor, without further act, shall become vested with all the estates, properties, rights, powers, duties and trusts of the predecessor trustee in the trusts hereunder with like effect as if originally named a Delaware Trustee or Managing Trustee herein; but upon the written request of such successor, such predecessor shall execute and deliver an instrument transferring to such successor, upon the trusts herein expressed, all the estates, properties, rights, powers, duties and trusts of such predecessor, and such predecessor shall duly assign, transfer, deliver and pay over to such successor all monies or other property then held by such predecessor upon the trusts herein expressed. Any right of the Beneficiary against the predecessor trustee, in its, his or her individual capacity, shall not be prejudiced by the appointment of any successor trustee and shall survive the termination of the trusts created hereby.

## ARTICLE X
## MISCELLANEOUS

10.01 <u>Limitations on Rights of Others</u>. Nothing in this Trust Agreement, whether express or implied, shall give to any Person other than the Trustees and the Beneficiary any legal or equitable right, remedy or claim hereunder. 

8

10.06  <u>Headings</u>. The headings of the various Articles and Sections herein are for convenience of reference only and shall not define or limit any of the terms or provisions hereof.

10.07  <u>Governing Law</u>.   This Trust Agreement shall be governed by, and construed in accordance with, the laws of the State of Delaware applicable to contracts to be performed entirely within such state, including all matters of construction, validity and performance.  Each party to this Trust Agreement, agrees to only bring suit in a court located in San Francisco, California, and consents to personal jurisdiction therein.

10.08  <u>Amendments</u>.  This Trust Agreement may be supplemented or amended by agreement of the Managing Trustee and the Delaware Trustee.

*   *   *   *

**IN WITNESS WHEREOF**, the parties hereto have caused this Trust Agreement to be duly executed by their respective officers as of the day and year first above written.

**DELAWARE TRUSTEE:**

Karin R. Slacum

**MANAGING TRUSTEE:**

Kraig R. Kast

# DEFENDANT'S
# EXHIBIT B

**From:** Ellen [mailto:ewilson@onlywebsites.com]
**Sent:** Wednesday, July 13, 2011 7:22 AM
**To:** Kraig Kast
**Subject:** Re: Immediately Delete Images from development site
**Importance:** High

Kraig:

Those images have been removed from your current site and the development site (www.athertontrust.com/new/).

Thank you.

Ellen Wilson
ewilson@onlywebsites.com

On Jul 12, 2011, at 5:48 PM, Kraig Kast wrote:

Ellen: Please see the attached letter and immediately delete the images referenced which were not intended to be published.

Kraig

<image001.jpg>   Kraig R. Kast
Managing Trustee
Atherton Trust Co.
177 Bovet Road, Sixth Floor
San Mateo, CA 94402

T 650.341.4480 SoCal 760.751.7027 F 650.341.1395

Lic. PFB 654 DOI 0G91440 DRE 01426063

The content of this message is considered by the sender to be trade secret and confidential. This message is protected under all US Federal and State and International copyright and confidentiality laws. The contents of this message are intended to be read only by the intended recipient(s). If you are not the intended recipient you are instructed to immediately delete this message and report your receipt to the sender.

<Erickson Ltr to Atherton.pdf>

Ellen Wilson
ewilson@onlywebsites.com
t. 800-932-6030
f. 877-883-8995


Ellen Wilson
ewilson@onlywebsites.com
t. 800-932-6030
f. 877-883-8995

DEFENDANT'S
EXHIBIT C

| Payment Due Date | New Balance | Past Due Amount | Minimum Payment |
|---|---|---|---|
| 10/23/11 | $2,187.79 | $0.00 | $40.00 |

**Account number:**

$ 

5149220709022201000040000218779000000000000006

```
23391 BEX Z 25911 C
KRAIG RUDINGER KAST
12155 VISTA TERAZZA CT
VALLEY CENTER CA 92082-4762
```

CARDMEMBER SERVICE
PO BOX 94014
PALATINE IL 60094-4014

*PURCHASE OF WEBSITE*

**CHASE ◉**
## freedom

Manage your account online:
www.chase.com/creditcards

### ACCOUNT SUMMARY

Account Number: 5149 2207 0902 2201

| | |
|---|---|
| Previous Balance | $1,910.66 |
| Payment, Credits | -$600.00 |
| Purchases | +$858.14 |
| Cash Advances | $0.00 |
| Balance Transfers | $0.00 |
| Fees Charged | $0.00 |
| Interest Charged | +$18.99 |
| New Balance | $2,187.79 |
| Opening/Closing Date | 08/27/11 – 09/26/11 |
| Total Credit Line | $14,000 |
| Available Credit | $11,812 |
| Cash Access Line | $11,200 |
| Available for Cash | $11,200 |

### PAYMENT INFORMATION

| | |
|---|---|
| New Balance | $2,187.79 |
| Payment Due Date | 10/23/11 |
| Minimum Payment Due | $40.00 |

**Late Payment Warning:** If we do not receive your minimum payment by the date listed above, you may have to pay a late fee of up to $35.00 and your APR's will be subject to increase to a maximum Penalty APR of 29.99%.

**Minimum Payment Warning:** If you make only the minimum payment each period, you will pay more in interest and it will take you longer to pay off your balance. For example:

| If you make no additional charges using this card and each month you pay... | You will pay off the balance shown on this statement in about... | And you will end up paying an estimated total of... |
|---|---|---|
| Only the minimum payment | 16 years | $3,389 |
| $71 | 3 years | $2,552 (Savings=$837) |

If you would like information about credit counseling services, call 1-866-797-2885.

### CHASE FREEDOM REWARDS SUMMARY

| | |
|---|---|
| Previous Points Balance | 24,494 |
| Points earned on purchases | 859 |
| 10% Bonus Points per $1 You Spend | 86 |
| Bonus 10 Points on Every Purchase | 120 |
| Current Points Total | 25,559 |

Have you gotten your reward yet? Take a look at how many points you've earned and log onto Ultimate Rewards today. You can get cash back, gift cards, merchandise and more! See your options at www.chase.com/ultimaterewards. So treat yourself - you earned it!

As a Chase Checking℠ customer, you earn more cash back for all your spending! You get 1 point for every $1 you spend, plus you will receive 10% bonus points per $1 spent and 10 bonus points on every purchase. Redeeming your points for cash back is easy! You can receive a check, statement credit, or even direct deposit into your Chase Checking account.

### ACCOUNT ACTIVITY

| Date of Transaction | Merchant Name or Transaction Description | $ Amount |
|---|---|---|
| 09/22 | Payment - Thank You | -600.00 |
| 09/02 | ALBERTSONS #6713 ESCONDIDO CA | 37.43 |
| 09/01 | NAPA NATIONAL ASSOCIAT 6005937657 FL | 42.08 |
| 09/02 | ESCONDIDO FEED AND ESCONDIDO CA | 91.73 |
| 09/10 | CVS PHARMACY #9216 HALF MOON BAY CA | 22.70 |
| 09/11 | JOES OF WESTLAKE DALY CITY CA | 57.87 |
| 09/14 | CRES INSURANCE SERVICE 800-8802474 CA | 116.00 |
| 09/14 | FAT IVORS RIB RACK VALLEY CENTER CA | 52.75 |
| 09/15 | VONS FUEL 10023448 ESCONDIDO CA | 28.00 |
| 09/17 | TANGO RESTAURANT & ESCONDIDO CA | 143.46 |
| 09/18 | GODADDY.COM 480-5058855 AZ | 82.80 |
| 09/23 | WAL-MART #3494 SAN MARCOS CA | 31.32 |
| 09/23 | ONLYWEB/LAWFIRMSITES AMERICAN FORK UT | 142.00 |

**This Statement is a Facsimile - Not an original**

| Payment Due Date | New Balance | Past Due Amount | Minimum Payment |
|---|---|---|---|
| 11/23/11 | $2,062.18 | $0.00 | $39.00 |

Account number: ▮▮▮▮▮▮

$ _____

Make your check payable to:
Chase Card Services.
Please write amount enclosed.
New address or e-mail? Print on back.

5149220709022201000003900002062180000000000000003

31938 SFX Z 22011 C
KRAIG RUDINGER KAST
12155 VISTA TERAZZA CT
VALLEY CENTER CA 92082-4762

CARDMEMBER SERVICE
PO BOX 94014
PALATINE IL 60094-4014



*NO PMT FOR WEBSITE*



# CHASE ◉
## freedom

Manage your account online:
www.chase.com/creditcards

Customer Service
1-800-945-2000

Additional contact
information on back ➡

## ACCOUNT SUMMARY

Account Number: 5149 2207 0902 2201

| | |
|---|---|
| Previous Balance | $2,197.79 |
| Payment, Credits | -$1,143.60 |
| Purchases | +$999.34 |
| Cash Advances | $0.00 |
| Balance Transfers | $0.00 |
| Fees Charged | $0.00 |
| Interest Charged | +$18.65 |
| New Balance | $2,062.18 |

| | |
|---|---|
| Opening/Closing Date | 09/27/11 - 10/26/11 |
| Total Credit Line | $14,000 |
| Available Credit | $11,937 |
| Cash Access Line | $11,200 |
| Available for Cash | $11,200 |

## PAYMENT INFORMATION

| | |
|---|---|
| New Balance | $2,062.18 |
| Payment Due Date | 11/23/11 |
| Minimum Payment Due | $39.00 |

**Late Payment Warning:** If we do not receive your minimum payment by the date listed above, you may have to pay a late fee of up to $35.00 and your APRs will be subject to increase to a maximum Penalty APR of 29.99%.

**Minimum Payment Warning:** If you make only the minimum payment each period, you will pay more in interest and it will take you longer to pay off your balance.  For example:

| If you make no additional charges using this card and each month you pay... | You will pay off the balance shown on this statement in about... | And you will end up paying an estimated total of... |
|---|---|---|
| Only the minimum payment | 10 years | $3,153 |
| $67 | 3 years | $2,406 (Savings=$747) |

If you would like information about credit counseling services, call 1-866-797-2885.

## CHASE FREEDOM REWARDS SUMMARY

| | |
|---|---|
| Previous Points Balance | 25,559 |
| Points earned on purchases | 956 |
| 10% Bonus Points per $1 Spend | 95 |
| Bonus 10 Points on Every Purchase | 110 |
| Bonus from 5% categories: Oct - Dec | 164 |
| Current Points Total | 26,885 |

Have you gotten your reward yet?  Take a look at how many points you've earned and log onto Ultimate Rewards today.  You can get cash back, gift cards, merchandise and more!  See your options at www.chase.com/ultimaterewards.  So treat yourself - you earned it!

As a Chase Checking ℠ customer, you earn more cash back for all your spending!  You get 1 point for every $1 you spend, plus you will receive 10% bonus points per $1 spent and 10 bonus points on every purchase.  Redeeming your points for cash back is easy!  You can receive a check, statement credit, or even direct deposit into your Chase Checking account.

## ACCOUNT ACTIVITY

| Date of Transaction | Merchant Name or Transaction Description | $ Amount |
|---|---|---|
| 10/21 | Payment - Thank You | -1,100.00 |
| 10/21 | GODADDY.COM 480-5058855 AZ | -43.80 |
| 09/26 | WAL-MART #3494 SAN MARCOS CA | 46.22 |
| 10/03 | NAPA NATIONAL ASSOCIAT 8005937657 FL | 42.68 |
| 10/05 | STAR HOUSE RESTAURANT ESCONDIDO CA | 41.00 |
| 10/21 | ST OF CALIF DMV-INTERN 916-6578943 CA | 360.00 |
| 10/21 | KOI CITY INC ESCONDIDO CA | 96.96 |
| 10/21 | GODADDY.COM 480-5058855 AZ | 51.48 |
| 10/21 | GODADDY.COM 480-5058855 AZ | 84.17 |
| 10/25 | SCOTT S CARMICHAEL DDS OCEANSIDE CA | 110.00 |
| 10/25 | PP*8957CODE 4029357733 CA | 1.95 |
| 10/26 | PAYPAL *WEBBSWATERG 4029357733 MD | 85.71 |
| 10/25 | ALBERTSONS #6713 ESCONDIDO CA | 79.77 |

**This Statement is a Facsimile - Not an original**

0000003  F3933336 C-1      000  N  Z  26  11/V/26      Page 1 of 2      00225    NA MA  31900    2001050004000319300001
X 0439 INS15216

DEFENDANT'S
EXHIBIT D

COURTESY COPY

ERNEST J. DRONENBURG, JR.
RECORDER/COUNTY CLERK
COUNTY OF SAN DIEGO
1600 PACIFIC HIGHWAY SUITE 260
P O BOX 121750 SAN DIEGO CA 92112 1750
(619) 237 0502

2011-025009

SEP-01-2011

FILED
Ernest J Dronenburg Jr
SAN DIEGO COUNTY CLERK
FEES        25 00
EXPIRES  SEP 01 2016
DEPUTY  C GRIFFIT

PLEASE PRINT/TYPE INFORMATION
AND RETURN ENTIRE FORM
A certified copy of this statement will
be provided after filing

Each Additional Copy is $2 00 Extra
Would you like additional copies?

☐ Yes  No of Copies  ☒ No

FORM INSTRUCTIONS ON NEXT PAGE

$ 10 00    FOR FIRST BUSINESS NAME ON STATEMENT
$ 4 00     FOR EACH ADDITIONAL BUSINESS NAME
           FILED ON SAME STATEMENT AND DOING
           BUSINESS AT THE SAME LOCATION
$ 3 00     FOR EACH ADDITIONAL OWNER IN EXCESS
           OF ONE OWNER

## FICTITIOUS BUSINESS NAME STATEMENT

(1) FICTITIOUS BUSINESS NAME(S)

a  *ATHERTON TRUST*          c. *ATHERTON & ASSOCIATES*

b. *ATHERTON INSURANCE SERVICES*   D. *THE ATHERTON COMPANY*

(2) LOCATED AT: *177 BOVET RD. 6TH FL /SAN MATEO /CA/SAN MATEO /94402*
                  Street Address (P O Box not acceptable)       City        State    COUNTY      Zip

Mailing Address *P.O. BOX 883, VALLEY CENTER, CA 92082*
                 (Optional)

(3) THIS BUSINESS IS CONDUCTED BY:

☒ A  An Individual          ☐ E  Joint Venture           ☐ I  A Limited Liability Company
☐ B  Husband and Wife       ☐ F  A Corporation           ☐ J  Limited Liability Partnership
☐ C  A General Partnership  ☒ G  A Trust                 ☐ K  An Unincorporated Association Other than a Partnership
☐ D  A Limited Partnership  ☐ H  Co-Partners             ☐ L  State or Local Registered Domestic Partners

(4) THE FIRST DAY OF BUSINESS WAS *12/31/2005*   OR IF NOT YET STARTED, CHECK HERE ☐

(5) THIS BUSINESS IS HEREBY REGISTERED BY THE FOLLOWING

#1  *KRAIG R. KAST*
    Owner's, Partner's, Trustee's Name or Corporation/LLC Name
    *177 BOVET RD, 6TH FL.*
    Residence/Corporation/LLC Street Address/PO Box not allowed
    *SAN MATEO   CA   94402*
    City          State    Zip

    Corporation or LLC- Print STATE of Incorporation/Organization

#2
    Owner's, Partner's, Trustee's Name or Corporation/LLC Name

    Residence/Corporation/LLC Street Address/PO Box not allowed

    City          State    Zip

    Corporation or LLC - Print STATE of Incorporation/Organization

#3
    Owner's, Partner's, Trustee's Name or Corporation/LLC Name

    Residence/Corporation/LLC Street Address/PO Box not allowed

    City          State    Zip

    Corporation or LLC - Print STATE of Incorporation/Organization

#4
    Owner's, Partner's, Trustee's Name or Corporation/LLC Name

    Residence/Corporation/LLC Street Address/PO Box not allowed

    City          State    Zip

    Corporation or LLC - Print STATE of Incorporation/Organization

I declare that all information in this statement is true and correct (A registrant who declares as true information which he or she knows to be false is guilty of a crime )

(6)  *Kraig R. Kast*                    *KRAIG R. KAST*
     (Signature of Registrant)          (Print name)              (Corp -LLC print Title)

THIS STATEMENT WAS FILED WITH THE RECORDER/COUNTY CLERK OF SAN DIEGO COUNTY AS INDICATED BY THE FILE STAMP ABOVE
NOTICE - THIS FICTITIOUS NAME STATEMENT EXPIRES FIVE (5) YEARS FROM THE DATE IT WAS FILED IN THE OFFICE OF THE COUNTY CLERK  A NEW
FICTITIOUS BUSINESS NAME STATEMENT MUST BE FILED BEFORE THAT TIME
THE FILING OF THIS STATEMENT DOES NOT OF ITSELF AUTHORIZE THE USE IN THIS STATE OF A FICTITIOUS BUSINESS NAME IN VIOLATION OF THE RIGHTS OF
ANOTHER UNDER FEDERAL, STATE, OR COMMON LAW (SEE SECTION 14411 ET SEQ , BUSINESS AND PROFESSIONS CODE)
IT IS THE RESPONSIBILITY OF THE REGISTRANT TO DETERMINE THAT THE FICTITIOUS BUSINESS NAME SELECTED WILL NOT VIOLATE
ANOTHER'S RIGHTS ESTABLISHED UNDER THE LAW

FORM 211 CO CLK (REV 12/28/2010)                          RECORDER/COUNTY CLERK

DEFENDANT'S
EXHIBIT E

Monday, December 10, 2012

THE STATE BAR OF CALIFORNIA

## ATTORNEY SEARCH

## Dennis Martin Russell - #118253

### Current Status:  Active

This member is active and may practice law in California.

See below for more details.

---

### Profile Information

*The following information is from the official records of The State Bar of California.*

| | | | |
|---|---|---|---|
| **Bar Number:** | 118253 | | |
| **Address:** | RUSSELL LAW GROUP 11150 W Olympic Blvd Ste 1120 Los Angeles, CA 90064 Map it | **Phone Number:** | (310) 990-2205 |
| | | **Fax Number:** | (888) 361-3584 |
| | | **e-mail:** | lawamerica@gmail.com |
| **County:** | Los Angeles | **Undergraduate School:** | Univ of Georgia; Athens GA |
| **District:** | District 2 | | |
| **Sections:** | None | **Law School:** | Southwestern Univ SOL; Los Angeles CA |

---

### Status History

| Effective Date | Status Change |
|---|---|
| Present | Active |
| 8/27/1995 | Active |
| 7/28/1995 | Not Eligible To Practice Law |
| 7/24/1989 | Active |
| 7/24/1989 | Not Eligible To Practice Law |
| 6/11/1985 | Admitted to The State Bar of California |

Explanation of member status

---

### Actions Affecting Eligibility to Practice Law

| Effective Date | Description | Case Number | Resulting Status |
|---|---|---|---|
| **Disciplinary and Related Actions** | | | |
| Overview of the attorney discipline system. | | | |
| 8/3/2012 | Stipulated disposition filed in SBCt | 11-O-17442 | |
| 7/28/1995 | Discipline w/actual suspension | 92-O-11930 | Not Eligible To Practice Law |

**Administrative Actions**

---

DEFENDANT'S
EXHIBIT F

**Kraig Kast**

| | |
|---|---|
| **From:** | Daniel Todd [dan@onlywebsites.com] |
| **Sent:** | Friday, March 16, 2012 10:45 PM |
| **To:** | kraig.kast@athertontrust.com |
| **Subject:** | Re: Atherton Trust Website |

Kraig-

The contract clearly states that all photos on the website are the responsibility of the owner of the website.

I have been through this about 3 times in the past 12 years of business. Most of the time the photographers want a couple hundred dollars and they will go away. Don't make a bigger deal out of this than it is. Seriously.

Sincerely,

Daniel Todd
Only Websites, Inc.

831 East 340 South
Suite 200
American Fork, UT 84003

Phone: (801) 770-7089
Toll-Free: (800) 932-6030
Fax: (877) 883-8995

Web: www.onlywebsites.com
Email: dan@onlywebsites.com

On Mar 16, 2012, at 6:09 PM, Kraig Kast wrote:

Daniel:

Please be advised that Atherton Trust is being sued for photographic copyright infringement because Only Websites (OW) failed to use an appropriate standard of care during the development of our site by protecting its development content behind passwords or firewalls so that it would not be viewable by the public until the site was finally approved by Atherton for publication to the web at the end of development. Even though the photos were removed at my request by Ellen after Atherton was contacted by the law firm representing the photographer, the images were captured and are being used as evidence against Atherton. This suit has damaged Atherton Trust's reputation and potentially financially hurt this company so badly that its continued operation is in doubt.

OW has violated several best practices of several web development associations. If a judgment is assessed against Atherton Trust, Atherton will be seeking restitution from your E & O insurance company.

1

Kraig R. Kast
Managing Trustee
Atherton Trust Co.
177 Bovet Road, Sixth Floor
San Mateo, CA 94402

T: NorCal 650 341 4480  SoCal  760 751 7027

Atherton Trust - Your Private Trust Company

Lic. PFB 558    DRE 01426063    DOI 0G91440

www.athertontrust.com

The entire contents of this message are trade secret and confidential and may not be disclosed without the written permission of the sender and/or recipient. If you received this message and are not the intended recipient you are advised to destroy this message immediately. Failure to destroy all forms of this message by an unintended recipient may result in legal action being taken. This transmission is protected under all US Federal privacy, electronic transmission and postal privacy laws.

DECLARATION OF KRAIG KAST TRUSTEE ATHERTON TRUST IN SUPPORT OF

DEFENDANT'S MOTION TO DISMISS

1. I Kraig Kast am the pro se defendant in the case no. 12-CV-1693 PGG. I have personal knowledge of the facts contained in this declaration.

2. I submit this declaration in support of Defendant's motion to dismiss with prejudice this case against Defendant Kraig Kast as Trustee and as an individual.

3. Attached here to is Defendant's motion and exhibits in support of Defendants support of Defendants motion. motion

4. Exhibit A is a true copy of the certificate of registration for Atherton Trust-A Delaware Statutory Trust from the State of Delaware. Also in Exhibit A is a True copy of the Trust By Laws.

5. Exhibit B is a true copy of an email sent by the Trustee demanding that Only Websites remove Plaintiff's images from their development website and confirmation from Only websites that the images were removed.

6. Exhibit C is a true copy of Defendants credit card statements which show when the website was purchased from Only websites.

7. Exhibit D is a true copy of the fictitious name registration in San Diego County showing the Trust's name was registered by the Trustee.

8. Exhibit E. A copy of the California Bar record for Dennis Russell attorney for Ms. D. Reinecker.

9. Exhibit F is a true copy of the email exchange between the Trustee and the owner of Only Websites regarding Only websites being aware of their lack of protection for their clients development websites.

Dated: December 10, 2012
    Valley Center, CA 92082

By: _____
    Kraig Kast former Trustee

DECLARATION OF KRAIG KAST TRUSTEE ATHERTON TRUST IN SUPPORT OF

DEFENDANT'S MOTION TO DISMISS

1. I Kraig Kast am the pro se defendant in the case no. 12-CV-1693 PGG. I have personal knowledge of the facts contained in this declaration.

2. I submit this declaration in support of Defendant's motion to dismiss with prejudice this case against Defendant Kraig Kast as Trustee and as an individual.

3. Attached here to is Defendant's motion and exhibits in support of Defendants support of Defendants motion. motion

4. Exhibit A is a true copy of the certificate of registration for Atherton Trust-A Delaware Statutory Trust from the State of Delaware. Also in Exhibit A is a True copy of the Trust By Laws.

5. Exhibit B is a true copy of an email sent by the Trustee demanding that Only Websites remove Plaintiff's images from their development website and confirmation from Only websites that the images were removed.

6. Exhibit C is a true copy of Defendants credit card statements which show when the website was purchased from Only websites.

7. Exhibit D is a true copy of the fictitious name registration in San Diego County showing the Trust's name was registered by the Trustee.

8. Exhibit E. A copy of the California Bar record for Dennis Russell attorney for Ms. D. Reinecker.

9. Exhibit F is a true copy of the email exchange between the Trustee and the owner of Only Websites regarding Only websites being aware of their lack of protection for their clients development websites.

Dated: December 10, 2012
     Valley Center, CA 92082

By: _Kraig Kast_ _____
       Kraig Kast former Trustee

CONFIDENTIAL FACSIMILE TRANSMISSION

Date: 12/11/2012 9:02 AM

TO: Hon. Paul G. Gardephe
United States District Court For
The Southern District Of New York
500 Pearl Street New York, NY 1007-1312

FROM: Kraig Kast Trustee
Atherton Trust-A Delaware Statutory Trust
12155 Vista Terraza Court
Valley Center, CA 92082

RE: Case Number 12-CV-1693-PGG

Attachment: Corrected Declaration

Total Pages Sent: 2

Message:

Please accept the attached Declaration by Kraig Kast in Support of Defendant Kraig Kast's Motion To Dismiss which corrects a typo in line item #3. Also please be advised that the referenced documents were sent via FedEx with delivery to you today instead of USPS Express mail as stated on the cover page.

Best regards,

Kraig Kast

## DECLARATION OF KRAIG KAST TRUSTEE ATHERTON TRUST IN SUPPORT OF

## DEFENDANT'S MOTION TO DISMISS

1. I Kraig Kast am the pro se defendant in the case no. 12-CV-1693 PGG. I have personal knowledge of the facts contained in this declaration.

2. I submit this declaration in support of Defendant's motion to dismiss with prejudice this case against Defendant Kraig Kast as Trustee and as an individual.

3. Attached here to is Defendant's motion and exhibits in support of Defendants motion.

4. Exhibit A is a true copy of the certificate of registration for Atherton Trust-A Delaware Statutory Trust from the State of Delaware. Also in Exhibit A is a True copy of the Trust By Laws.

5. Exhibit B is a true copy of an email sent by the Trustee demanding that Only Websites remove Plaintiff's images from their development website and confirmation from Only websites that the images were removed.

6. Exhibit C is a true copy of Defendants credit card statements which show when the website was purchased from Only websites.

7. Exhibit D is a true copy of the fictitious name registration in San Diego County showing the Trust's name was registered by the Trustee.

8. Exhibit E. A copy of the California Bar record for Dennis Russell attorney for Ms. D. Reinecker.

9. Exhibit F is a true copy of the email exchange between the Trustee and the owner of Only Websites regarding Only websites being aware of their lack of protection for their clients development websites.

Dated: December 10, 2012
      Valley Center, CA 92082

By:    _____
           Kraig Kast former Trustee