Peter C. Dee
Mavronicolas Mueller & Dee LLP
Specially Appearing for Defendant Atherton Trust
950 Third Avenue, 10th Floor
New York, NY 10022
(646) 770-1256
pdee@mavrolaw.com

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ERICKSON PRODUCTIONS, INC., et al.,<br><br>v.<br><br>ATHERTON TRUST, et al. | ECF Case<br><br>1:12-cv-01693 (PGG) (KNF)<br><br>**Memorandum in Opposition to Motion for Default and in Support of Motion to Set Aside Entry of Default and Dismiss for Lack of Personal Jurisdiction** |

## I.   INTRODUCTION AND PROCEDURAL HISTORY

Atherton Trust is a Delaware Statutory Trust created pursuant to Del. Code. §3801, *et seq.*. Atherton Trust was dissolved on April 5, 2012. The complaint in this matter was filed on March 7, 2012, alleging copyright infringement against Atherton Trust and its managing trustee Kraig Kast based on the alleged unauthorized use of Plaintiff's images on the Atherton Trust website. On June 1, 2012, Plaintiff filed an Amended Complaint adding Only Websites, Inc., (hereinafter "OW") the web developer responsible for the website in question, as a third defendant.

On May 21, 2012, Mr. Kast, acting *pro se* moved to dismiss the present actions against himself and Atherton Trust on the basis that personal jurisdiction was lacking, and that venue in the Southern District of New York was likewise improper. However,

since a Delaware Trust cannot appear pro se, default was entered against Atherton Trust on November 28, 2012. *See* Docket No. 18.

On March 20, 2013, this Court granted Mr. Kast's motion to dismiss the claims against him, in his individual capacity, based on lack of personal jurisdiction. Docket No. 31. On October 22, 2013, this Court ordered Plaintiff to prepare an inquest memorandum and gave Atherton Trust until December 3, 2013, to oppose the default judgment.

Atherton Trust has now retained the undersigned attorney, through whom it specially appears and requests that this Court deny Plaintiff's application for default and set aside the entry of default entered against it. As described herein, Atherton Trust has meritorious defenses against the copyright claims asserted herein, and requests that it have the opportunity to present those defenses to the district court that will ultimately hear this action. Moreover, for the reasons set forth herein (and as previously recognized in connection with Mr. Kast's limited appearance in his personal capacity), this Court lacks personal jurisdiction over Atherton Trust. This Court should, therefore, set aside the entry of default against it and dismiss the matter.

## II.  LEGAL STANDARD

### A.  Relief From Default

Federal Rule of Civil Procedure 55 states that "The court may set aside an entry of default for good cause, and it may set aside a default judgment under Rule 60(b)." Fed. Rule Civ. Pro. 55(c). The standard for granting a Rule 55(c) motion is lower than the "excusable neglect" standard for opening a default judgment under Rule 60. *See, e.g.,*

*Meehan v. Snow,* 652 F.2d 274, 276 (2d. Cir. 1981).

Courts have identified three widely accepted factors to be considered when deciding to set aside the entry of default, including "(1) whether the default was willful; (2) whether setting aside the would prejudice the adversary; and (3) whether a meritorious defense is presented." *Enron Oil Corp. v. Diakuhara,* 10 F.3d 90 (2d. Cir. 1993). Any doubts regarding the merits of a motion under Rule 55 "should be resolved in favor of setting aside a default so that a determination may be made on the merits of the case. *Morris v. Charnin,* 85 F.R.D. 689, 690 (S.D.N.Y.1980) (quoting *Alopari v. O'Leary,* 154 F.Supp. 78 (E.D.N.Y.1957)).

Notwithstanding the general standard set forth above, courts have held that an entry of default ***must*** be vacated if it is found to be unsupported by jurisdiction. *See, e.g., Lichtenstein v. Jewelart, Inc.,* 95 F.R.D. 511, 513 (E.D.N.Y. 1982); *Berlanti Constr. Co. v. Republic of China,* 190 F.Supp. 126, 129 (S.D.N.Y. 1960); *Kadet-Kruger & Co. v. Celanese Corp.,* 216 F.Supp. 249, 250 (E.D. Ill. 1963). The reason, as the court explains in *Jewelart,* is that "a defendant has no obligation to answer a complaint filed in federal court that lacks personal jurisdiction over him." *Jewelart,* 95 F.R.D. at 513. Setting aside the entry of default in this circumstance "aids both the litigants and the courts in the efficient resolution of the litigation," since any judgment rendered without jurisdiction could be collaterally attacked by the parties. *Id.* A motion under Rule 55(c) based on lack of jurisdiction "can and should be treated as an initial motion to dismiss." *Id.* As such, the Plaintiff bears the burden of establishing that the court has jurisdiction over the defendant. *See, e.g., Whitaker v. Am. Telecasting, Inc.,* 261 F.3d 196, 208 (2d. Cir.

3

2001); *Ocala Waste Disposal Associates v. GGC, Inc.,* 1993 US Dist. LEXIS 5578 at *5 (S.D.N.Y. 1993); *Triad Energy Corp v. McNell,* 110 F.R.D. 382, 385 (S.D.N.Y. 1996); *Leab v. Streit,* 584 F.Supp. 748, 760 (S.D.N.Y. 1984).

B.     **Personal Jurisdiction In New York**

Plaintiff has not (and cannot) allege that the exercise of general jurisdiction over Atherton Trust is appropriate in this case. As such, this court need only consider whether it may exercise specific jurisdiction under the circumstances presented here. A New York court may exercise specific personal jurisdiction over a non-resident defendant who "transacts any business within the state or contracts anywhere to supply goods or services in the state." N.Y. C.P.L.R. §302(a)(1). Thus, for jurisdiction to be appropriate, the defendant must "purposefully avail" itself of the privilege of doing business in New York. Moreover, for specific personal jurisdiction to apply, the Plaintiff's claim must arise out of or otherwise be related to the defendant's contacts in New York. *See, e.g., Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414 (1984). New York's Long-Arm statute requires a "strong nexus between the plaintiff's cause of action and the defendant's in state conduct." *Welsh v. Servicemaster Corp.,* 930 F.Supp. 908, 910 (S.D.N.Y. 1996).

### III.    ARGUMENT

A.     **This Court Should Set Aside the Entry of Default Because It Lacks Personal Jurisdiction Over Atherton Trust**

As noted above, a court must set aside the entry of default against a party if it

4

lacks personal jurisdiction over that party.  In the instant case, Plaintiff has failed to establish personal jurisdiction over Atherton Trust.  Indeed, this court has already considered a closely related question in this matter, and determined that the facts were not sufficient to support jurisdiction over Kraig Kast, the former managing trustee of Atherton Trust.  *See* March 20, 2013 Memorandum Opinion & Order (Docket No. 31). Indeed, as set forth further below, this court lacks personal jurisdiction over Atherton Trust for the precise reasons previously set forth in connection in Mr. Kast's prior motion and the accompanying declarations.

As noted above, Plaintiff has not alleged that the exercise of general jurisdiction over Atherton Trust is appropriate.  As such, this court need only consider whether it may exercise specific jurisdiction over Atherton Trust in the instant case.  Specific jurisdiction may be exercised over a defendant when "(1) defendant purposefully availed himself of the privilege of doing business in the forum state such that the defendant could foresee being brought into court there; and (2) plaintiff's claim arises out of or is related to the defendant's contacts with the forum state." *Aqua Products, Inc. v. Smartpool, Inc.,* 2005 WL 1994013 at *5 (S.D.N.Y. Aug. 18, 2005)(citing, *inter alia*, *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414 (1984)).

As previously recognized by this Court, Plaintiff cannot establish either element in the instant case.  Atherton Trust was not created in New York, nor is its principle place of business within the state.  *See* Declaration of Kraig Kast, filed concurrently herewith, at ¶4 (hereinafter "*Kast Declaration*").  The claims herein relate exclusively to the website for Atherton Trust, and images that were allegedly displayed on that website.  Atherton

Trust does not do business in New York and has no physical presence within the state. *Kast Declaration* at ¶4-5.  Moreover, no meetings of the trustees have ever taken place in New York, and no meetings with customers or prospective customers have taken place during the relevant time period.  *Kast Declaration* at ¶7.  The website itself was not created in New York, or pursuant to any New York contract.  *Kast Declaration* at ¶9.  Plaintiffs likewise have no connection to New York.

The sole basis for Plaintiff's attempts to establish jurisdiction in New York is the Atherton Trust website, and the fact that New York residents could potentially access the site.  This, however, is insufficient.  It is well established that a "website that merely passively provides information that is accessed by individuals in New York is not grounds for the exercise of personal jurisdiction." *Best Van Lines, Inc., v. Walker,* 490 F.3d 239, 251 (2d. Cir. 2007).  As this Court has already recognized in this very case, the website for Atherton Trust is "best described as a 'passive' website which 'does little more than make information available to those who are interested in the [Trust's] product[s].'"  Docket No. 31 at 7, quoting *Stephan v. Babysport, LLC,* 499 F.Supp. 2d 279, 288 (E.D.N.Y. 2007).  As such, this Court held that the Trust website "cannot support a finding of the transaction of business sufficient to support the exercise of personal jurisdiction." *Id.*

In addition, as this court has already recognized, Plaintiff's claims herein are wholly unrelated to any alleged activity of Atherton Trust in the State of New York.  As this Court previously noted,

> Even if this Court could find that the testimonials on the Trust website

6

>demonstrate that Kast transacted business in New York, Plaintiffs have not shown that their claim "arises out of or is related to the defendant's contacts with the forum state." Aqua Prods. Inc., 2005 WL 1994013, at *5. "[T]his test requires 'a substantial nexus between the cause of action and the defendant's contacts with New York.'" Id. (quoting Graphic Controls Corp." v. Utah Med.Prods.. Inc., 149 F.3d 1382, 1386 (Fed. Cir. 1998). Plaintiffs have not offered any evidence suggesting that there is any connection between their copyright claims and the two New York residents who allegedly used the Trust's services…"
>
>Docket No. 31, at 9-10.

Plaintiff has not made any attempt to explain how, in light of the forgoing, personal jurisdiction over Atherton Trust would be appropriate in the Southern District of New York. Indeed, for the reasons set forth above, it is not. This Court should, therefore, set aside the entry of default against the Trust, and dismiss this matter for lack of personal jurisdiction.

### B. Even if Personal Jurisdiction Was Appropriate, Defendant Meets the Standard Criteria for Setting Aside an Entry of Default.

As noted above, if a court has personal jurisdiction over a defendant against whom default has been entered, it should consider three factors when deciding whether to lift the default. These include "(1) whether the default was willful; (2) whether setting aside the would prejudice the adversary; and (3) whether a meritorious defense is presented." *Enron Oil Corp. v. Diakuhara,* 10 F.3d 90 (2d. Cir. 1993) (internal citations omitted). Other relevant equitable factors may also be considered, including "whether the entry of default would bring about a harsh or unfair result." *Id.*

In the instant case, each of the relevant factors militates in favor of setting aside

the default. First, Atherton Trust's default should not be considered willful. Indeed, as described above, Mr. Kast *attempted* to timely appear and contest this court's jurisdiction over Atherton Trust. *See, e.g.,* Docket Nos. 3, 18, and 25. Although Mr. Kast's attempts were properly rejected by this court, based on the well-established principle that an entity cannot appear *pro se*, it is nonetheless apparent from the record that Atherton Trust at least attempted, via its managing trustee, to timely appear in this action. Its default should, therefore, not be considered "willful" in the context of Fed. R. Civ. Proc. 55. Atherton Trust has now retained an attorney and has timely opposed the motion for default and requests that this Court set aside the entry of default.

Moving to the second factor, setting aside the entry of default in the instant case would not prejudice the Plaintiff. Although Plaintiff will be required to litigate the merits of its claims against Atherton, this alone does not constitute "prejudice." Moreover, Plaintiff has filed an individual action against Kraig Kast in the Central District of California, and the individual matter was transferred to the Northern District of California on November 22. The California matter is based on exactly the same facts as the instant case, and Mr. Kast has not yet been required to file an answer in that matter. Should this Court decide to vacate the entry of default, Plaintiff will be able to litigate its claims against Atherton simultaneously with its claims against Mr. Kast, thereby incurring no additional costs or prejudice whatsoever.

Finally, Atherton Trust has meritorious defenses to the claims of copyright infringement that have been asserted against it. Not only does this court lack jurisdiction, as described above, but Defendant has further substantive defenses to the claims against

it.  As an initial matter, Atherton Trust did not own or control the development website at the time of the alleged infringement.  See *Kast Declaration* at ¶10.  As such, it is apparent that the Trust cannot be liable for direct infringement.

The claims for contributory and vicarious infringement against the Trust are likewise flawed.  In order to satisfy the requirements for contributory liability, Plaintiff must show that Atherton Trust had knowledge of Only Website's unauthorized use of the Plaintiff's images and must show that the Trust materially contributed to the infringement.  Moreover, courts have held that the "material contribution" element must coincide temporally with the "knowledge" element.

Here, Plaintiff has alleged, but not proven, that Atherton Trust provided copies of Plaintiff's images and instructed the developer to use such images on the site.  Defendant contests these allegations.  If Defendant is allowed to litigate this action, it will show that it only provided OW with sample websites that had the layout and overall feel that Atherton Trust desired for its own website.  Moreover, Defendant will show that it specifically instructed OW to find properly licensed images for use on its site and that the only image that was ever used on the final Atherton Trust website after ownership was transferred to Atherton was properly licensed through Corbis.  *Kast Declaration* at ¶14, 16.  As such, Plaintiff will not be able to establish the required elements for a finding of contributory liability.

Likewise, Plaintiff will not be able to hold Atherton Trust vicariously liable for OW's alleged infringements.  Liability for vicarious infringement requires a showing that Atherton Trust received a direct financial benefit from the infringement, as well as a right

9

and ability to supervise the direct infringers. *See, e.g., Shapiro, Bernstein and Co. v. H. L. Green Co.*, 316 F.2d 304 (2d Cir. 1963). In the instant case, Plaintiff will be wholly unable to show that Atherton Trust satisfies either element.

First, Plaintiff cannot establish that Atherton Trust received any benefit as a result of the alleged infringements. Atherton Trust did not own the development website at the time of the alleged infringement. *Kast Declaration* at ¶10. Moreover, the development website was not supposed to be publicly visible during the period of development. A business obviously does not benefit by having a fragmented, partially developed website that is visible to the public any more than it would benefit from a half-completed advertisement in the Sunday paper. Moreover, Atherton only used properly licensed images on the final site, and instructed OW from the outset that it would require OW to find properly licensed images. *Kast Declaration* at ¶¶14, 16-17. OW apparently used the images during the development phase of its site as a mere "placeholder", to maintain the structural integrity of the template it had chosen. Any benefits from this practice accrued solely to OW (if any benefit was received by anyone).

Moreover, Atherton Trust did not have the requisite ability to control the internal practices of OW or the manner in which they used templates and/or images while creating client websites. *Kast Declaration* at ¶15. To the extent that Atherton did have any control, it attempted to use the control to *prevent* infringement, not to encourage infringement. The initial questionnaire submitted to OW by Atherton Trust, while noting that it liked the design elements of the Wells Fargo site, explicitly stated that Atherton Trust "need[ed] to choose photos from options you provide." *Kast Declaration* at ¶16.

OW simply disregarded these instructions, highlighting the level of control (or lack thereof) that Atherton Trust had over the development site.. In sum, Atherton Trust did not have the requisite ability to control the activities of OW, nor did they benefit finally in any way form the infringement.  As such, Atherton Trust cannot be held vicariously liable for the actions of OW.

As described above, Plaintiff cannot prove the elements required to impose liability on Atherton Trust and the Trust has meritorious defenses to Plaintiff's allegations of direct, contributory and vicarious copyright infringement.  Thus, the Trust satisfies the third prong in the Rule 55 analysis, and this Court should therefore vacate the entry of default against it.

## IV.   CONCLUSION

For the reasons set forth herein, this court should set aside the entry of default against Atherton Trust.  This court lacks personal jurisdiction over the Trust, for all of the reasons already recognized by this court in connection with Mr. Kast's motion to dismiss.  This court should, therefore, exercise its discretion not only to set aside the entry of default, but should also summarily dismiss this matter based on its lack of jurisdiction.

Moreover, even if this court were to find that personal jurisdiction over Atherton Trust was appropriate, it should still set aside entry of default pursuant to the "good cause" standard set forth in Fed. R. Civ. Proc. 55.  Atherton Trust's default should not be considered willful, as Mr. Kast did attempt to timely appear on behalf of the Trust.  Plaintiff will not be prejudiced by setting aside the default, as it must nonetheless litigate its claims against Mr. Kast, based on essentially identical factual allegations.  Atherton

Trust has meritorious defenses to the claims against it, and requests only that this court vacate the entry of default and indulge its oft-cited preference for deciding cases on their merits.

Dated:  New York, New York
December 3, 2013

Respectfully Submitted,

Mavronicolas, Mueller, & Dee, LLP

By    /s/ Peter Dee
Peter C. Dee
Specially Appearing for Atherton Trust
950 Third Avenue, 10th Floor
New York, NY 10022
(646) 770-1256
pdee@mavrolaw.com

**CERTIFICATE OF SERVICE**

THE UNDERSIGNED HEREBY CERTIFIES that on this 3rd day of December, 2013, a true and correct copy of the foregoing was filed with the Clerk of the Court using the CM/ECF system and served on all of those parties receiving notification through the CM/ECF system.

/s/      Peter C. Dee
Peter C. Dee