UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
ERICKSON PRODUCTIONS, INC., and :
JIM ERICKSON,

                                 :

               Plaintiffs,    :

           -against-       :

ONLY WEBSITES, INC.,      :

             Defendant.    :
------------------------------------------------------------X
KEVIN NATHANIEL FOX
UNITED STATES MAGISTRATE JUDGE

**REPORT AND RECOMMENDATION**

12-CV-1693 (PGG) (KNF)

TO THE HONORABLE PAUL G. GARDEPHE, UNITED STATES DISTRICT JUDGE

## INTRODUCTION

Plaintiffs Erickson Productions, Inc. ("Erickson Productions") and Jim Erickson

("Erickson") commenced this action against, inter alia, Only Websites, Inc. ("Only Websites") to

recover damages, costs and attorneys' fees, and to obtain injunctive relief, pursuant to the

Copyright Act of 1976, 17 U.S.C. §§ 101, et seq.[1] On November 28, 2012, the Clerk of Court

entered a default against Only Websites, pursuant to Rule 55(b) of the Federal Rules of Civil

Procedure. Thereafter, your Honor referred this action to the undersigned for an inquest on

damages. In connection with the inquest, the plaintiffs submitted proposed findings of fact and

conclusions of law, and a memorandum of law. In addition, they submitted declarations by their

counsel Kevin P. McCulloch ("McCulloch"), and by Jesse Hughes ("Hughes"), director of sales

---

[1] Erickson Productions commenced the action on March 7, 2012, against defendants Atherton Trust and
Kraig R. Kast ("Kast"). Thereafter, Erickson Productions filed an amended complaint, adding Erickson as
a plaintiff and Only Websites as a defendant. On March 20, 2013, your Honor dismissed the amended
complaint against Kast, for lack of personal jurisdiction. On September 19, 2014, Atherton Trust's motion
to vacate the default entered against it and to dismiss the amended complaint, for lack of personal
jurisdiction, was granted.

and marketing for Erickson Productions.  McCulloch's declaration explains that attached thereto are: (i) Exhibit A, a "true and correct copy of" McCulloch's July 12, 2011 letter to Atherton Trust demanding that it "cease and desist the unauthorized use of the Plaintiffs' copyrighted images on the Atherton website"; (ii) Exhibit B, "a true and correct copy of an email exchange dated July 13, 2011 between [McCulloch] and former defendant Kast"; (iii) Exhibit C, "a true and correct copy of an email dated March 7, 2012 from Kast"; (iv) Exhibit D, "a true and correct copy of 'call logs' maintained by . . . Only Websites . . . regarding its correspondence and communications with Kast"; (v) Exhibit E, "a true and correct copy of screen captures from the Atherton Trust website that is the subject of this action"; (vi) Exhibit F, "a true and correct copy of invoices comprised of case costs and attorney fees for this action"; and (vii) Exhibit G, "a true and correct copy of . . . Kast's May 2012 motion to dismiss and supporting declaration filed in this action."  Hughes's declaration explains that attached to it are: 1) Exhibit A, "a true and correct copy of [the] certificate of copyright registration" for copyright registration VA 1-745-747; 2) Exhibit B, "a true and correct copy of [the] certificate of copyright registration" for copyright registration VA 1-734-754; and 3) Exhibit C, "a true and correct copy of [the] certificate of copyright registration" for copyright registration VA 1-632-501.  Based on the plaintiffs' amended complaint and inquest submissions, the following are the Court's findings of fact and conclusions of law.

## FINDINGS OF FACT

Erickson Productions is the sole distributor and licensor of stock photography images taken by Erickson, a professional photographer.  Erickson Productions' primary place of business is Petaluma, California.  Only Websites is a website development company; its primary place of business is in Utah.  Only Websites acquired three of Erickson's copyrighted photographs, identified as Image ID 15079/Film No. 07004-278, Image ID 3540/Film No.

01018-03, and Image ID 21002/Film No. 07006-3520, by copying them from the Wells Fargo

Wealth Management Marketing ("Wells Fargo") website.  Wells Fargo had secured permission

to use the photographs via a license agreement, dated August 25, 2010, into which it entered

with Erickson Productions.  Only Websites used the three Erickson photographs for commercial

purposes in designing a website for one of its clients, Atherton Trust, a real estate wealth

management company.  See Hughes Decl., Exhibit D.

       Erickson charged Wells Fargo a discounted licensing fee of $700 to use each of the

photographs at issue in this action.  Erickson's typical licensing fee, for online usage rights of his

photographs, is, according to Hughes, "approximately $1,250" per photograph.  Erickson's

copyright interest in the photograph identified as Image ID 15079/Film No. 07004-278 was

registered under Copyright Registration VA 1-745-747, on October 25, 2010.  Erickson's

copyright interest in the photograph identified as Image ID 3540/Film No. 01018-03 was

registered under Copyright Registration VA 1-734-754, on August 26, 2010.  Erickson's

copyright interest in the photograph identified as Image ID 21002/Film No. 07006-3520 was

registered under Copyright Registration VA 1-632-501, on January 9, 2008.  See Hughes Decl.,

Exhibits A-C.

       According to McCulloch, Exhibit D to his declaration "is a true and correct copy of all

'call logs' maintained by Defendant Only Websites, Inc. regarding its correspondence and

communications with Defendant Kast."  The plaintiffs assert that Kast "is Chief Executive

Officer and Managing Trustee of Atherton Trust," and that Kast "first contacted Only Websites

on or about December 16, 2010, months after the effective date of registration of all three

photos."  Thus, Only Websites' unauthorized use of the photographs occurred several months

after the effective date on which Erickson's copyrights in all three photographs were registered

with the United States Copyright Office.  The plaintiffs maintain that the communications

reproduced in the Only Websites "call log," – messages exchanged by Kast and Only Websites

representatives – demonstrate "that Only Websites fully understood that copying from the Wells

Fargo website would run afoul of copyright restrictions and expressly discussed the potential

copyright implications of copying content from another website."  The plaintiffs contend that

"Only Websites' project manager expressly stated, in regards to copying content from the Wells

Fargo website, that *'[w]e need to be sensitive to copy writing [sic] and change it up a bit.'"*

(emphasis in original).  As a result of Only Websites' unauthorized use of Erickson's

copyrighted photographs, the plaintiffs seek statutory damages, as permitted under 17 U.S.C.

§ 504(c), and the costs and attorneys' fees they incurred in this action, pursuant to 17 U.S.C.

§ 505.

## CONCLUSIONS OF LAW

"[A] party's default is deemed to constitute a concession of all well pleaded allegations

of liability."  Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir.

1992).  "Even when a default judgment is warranted based on a party's failure to defend, the

allegations in the complaint with respect to the amount of the damages are not deemed true.  The

district court must instead conduct an inquiry in order to ascertain the amount of damages with

reasonable certainty."  Credit Lyonnais Sec. (USA), Inc. v. Alcantara, 183 F.3d 151, 155 (2d Cir.

1999) (citations omitted).  Establishing the appropriate amount of damages involves two steps:

(1) "determining the proper rule for calculating damages on a claim" and (2) "assessing

plaintiff's evidence supporting the damages to be determined under this rule."  Id.

Rule 54 of the Federal Rules of Civil Procedure explains that "[a] default judgment must

not differ in kind from, or exceed in amount, what is demanded in the pleadings."  Fed. R. Civ.

P. 54(c).  "[N]otice that comes at the inquest stage" is not sufficient in itself to satisfy the notice

requirement of Rule 54(c) and to "permit a plaintiff in a default action to recover for damages

not claimed in the complaint." Silge v. Merz, 510 F.3d 157, 161 (2d Cir. 2007).

In an inquest on damages following a default, damages must be based on admissible

evidence.  See Easterly v. Tri-Star Transport Corp., No. 11 CV 6365, 2015 WL 337565, at *5

(S.D.N.Y. Jan. 23, 2015); Smith v. Islamic Emirate of Afghanistan, 262 F. Supp. 2d 217, 224

(S.D.N.Y. 2003).  The Federal Rules of Evidence require that an item of evidence must be

authenticated and that requirement is satisfied by the production of evidence "sufficient to

support a finding that the item is what the proponent claims it is." Fed. R. Evid. 901(a).

Copyright Damages

Under the Copyright Act, a copyright owner may elect to receive from an infringer either

of two types damages.  "The copyright owner is entitled to recover the actual damages [he

suffered] as a result of the infringement, and any profits of the infringer . . . attributable to the

infringement and . . . not taken into account in computing actual damages." 17 U.S.C. § 504(b).

However,

> "[t]he copyright owner may elect, at any time before final judgement is rendered, to
> recover, instead of actual damages and profits, an award of statutory damages for all
> infringements involved in the action, with respect to any one work, for which any one
> infringer is liable individually, or for which any two or more infringers are liable jointly
> and severally, in a sum of not less than $750 or more than $30,000 as the court considers
> just."

17 U.S.C. § 504(c)(1).

"Statutory damages for copyright infringement are available without proof of plaintiff's actual

damages or proof of any damages." All-Star Marketing Grp., LLC v. Media Brands Co., Ltd.,

775 F. Supp. 2d 613, 626 (S.D.N.Y. 2011) (internal quotation marks and citation omitted).

"[N]o award of statutory damages or of attorney's fees, as provided by sections 504 and 505,

shall be made for–(1) any infringement of copyright in an unpublished work commenced before

the effective date of its registration; or (2) any infringement of copyright commenced after first

publication of the work and before the effective date of its registration, unless such registration is

made within three months after the first publication of the work." 17 U.S.C. § 412.

"When determining the amount of statutory damages to award for copyright

infringement, courts consider:

> (1) the infringer's state of mind; (2) the expenses saved, and profits earned, by the
> infringer; (3) the revenue lost by the copyright holder; (4) the deterrent effect on the
> infringer and third parties; (5) the [infringer's] cooperation in providing evidence
> concerning the value of the infringing material; and (6) the conduct and attitude of the
> parties."

> Agence France Presse v. Morel, 934 F. Supp. 2d 584, 592 n.4 (S.D.N.Y. 2013) (citation
> omitted).

"Awards of statutory damages serve two purposes–compensatory and punitive." Fitzgerald

Publ'g Co. v. Baylor Publ'g Co., 807 F.2d 1110, 1117 (2d Cir. 1986).

Where a court finds that an "infringement was committed willfully, the court in its

discretion may increase the award of statutory damages to a sum of not more than $150,000."

17 U.S.C. § 504(c)(2). "Copyright infringement is deemed willful by virtue of a defendant's

default." Rovio Entm't, Ltd. v. Allstar Vending, Inc., No. 14-CV-7346, 2015 WL 1508497, at

*5 (S.D.N.Y. Apr. 1, 2015) (citations omitted). This is so because, "[b]y virtue of their default,

defendants have admitted plaintiffs' allegation that they acted knowingly and intentionally or

with reckless disregard or willful blindness to plaintiffs' rights." Lyons Partnership, L.P. v. D &

L Amusement & Entm't, Inc., 702 F. Supp. 2d 104, 117 (E.D.N.Y. 2010). "A willful infringer . .

. should be liable for a substantial amount over and above the market value of a legitimate

license for otherwise infringers would be encouraged to willfully violate the law knowing the

full extent of their liability would not exceed what they would have to pay for a license on the

open market." Fallaci v. New Gazette Literary Corp., 568 F. Supp. 1172, 1174 (S.D.N.Y. 1983).

The plaintiffs have elected to seek enhanced statutory damages in the amount of $150,000, per infringed photograph, or $450,000, in total, pursuant to 17 U.S.C. § 504(c)(2), because they contend the defendant's infringement was willful.  By seeking enhanced statutory damages, the plaintiffs have not exceeded the type or quantity of damages demanded in their amended complaint; therefore, they have complied with Rule 54(c)'s notice requirement concerning the scope of damages.[2]

Erickson's copyright interests in the three photographs at issue were registered with the United States Copyright Office, under three separate registrations: VA 1-632-501; VA 1-734-754; and VA 1-745-747, with the following respective effective dates of registration: January 9, 2008, August 26, 2010, and October 25, 2010.  Each registration date predates the defendant's infringement of Erickson's copyright interests.  In support of their damages request, and in urging the Court to find that: (1) Kast first contacted Only Websites in December 2010, months after the effective registration dates of the three photographs; and (2) Only Websites acted willfully, because its project manager was aware that copyright law might be implicated in the use of the photographs at issue here but, proceeded to use the photographs, the plaintiffs rely upon Only Websites' communication log, which is Exhibit D to McCulloch's declaration.  The plaintiffs' reliance on the log is misplaced.  No evidence is in the record before the Court that authenticates the log, as required by Fed. R. Evid. 901, as no one with personal knowledge of Only Websites' log submitted an affidavit establishing that the log is what the plaintiffs claim. Therefore, the Court cannot consider the log in this inquest proceeding.  However, by virtue of

---

[2]  Although the amended complaint did not specify the amount of damages sought, the amended complaint's prayer for relief requests an award to the plaintiffs of "[a]ll allowable damages under the Copyright Act, including, but not limited to, statutory or actual damages . . . [a]ll allowable damages caused by and/or resulting from Defendants' violation and infringement of Plaintiff's [sic] moral rights in and to this creative visual work . . . [and] [a]ny other relief authorized by law, including punitive and/or exemplary damages."

its default, Only Websites' copyright infringement is deemed willful.  See Rovio, 2015 WL 1508497, at *5.  Therefore, the plaintiffs may recover enhanced statutory damages.

The court may award enhanced statutory damages of up to $150,000 per infringed photograph.  The plaintiffs have requested that amount of statutory damages with respect to each of the three photographs that were infringed by Only Websites.  The record evidence establishes that, typically, the plaintiffs charge a license fee of approximately $1,250, per photograph, for those who wish to obtain online usage rights to Erickson's copyrighted photographs.  Thus, Only Websites saved $3,750 by not paying the licensing fees the plaintiffs would have charged for the privilege of online usage of the three copyrighted photographs, while the plaintiffs lost that revenue.  The Court has considered these economic factors, the need to deter Only Websites and others from violating the copyright law in the future and Only Websites' willful conduct, as evidenced by its default in this action.  As a result, the Court finds that an award of $11,250, in enhanced statutory damages: $3,750 per infringed photograph or three times the licensing fee the plaintiffs charge typically to those who wish to obtain online usage of an Erickson copyrighted photograph, is reasonable.  See Realsongs Universal Music Corp. v. 3A North Park Ave. Rest. Corp., 749 F. Supp. 2d 81, 87 (E.D.N.Y. 2010)(noting that where infringement is not innocent courts have awarded statutory damages in excess of twice the unpaid license fee); BWP Media USA Inc. v. A.R. Communications, LLC, No. 6:14-cv-120-Orl-22KR, 2014 WL 5038590, at *4 (M.D. Fla. Oct. 6, 2014)(finding that a statutory damages award, for copyright infringement, of three times the licensee fee is reasonable).  This amount will compensate the plaintiffs for the licensing fees revenue they lost, due to the defendant's misconduct, and will act as a specific deterrent to Only Websites and as a general deterrent to those who might consider engaging in infringing conduct in the future.

Costs and Attorneys' Fees

A.  Costs

"In any civil action under [the Copyright Act], the court in its discretion may allow the recovery of full costs by or against any party other than the United States or an officer thereof. Except as otherwise provided by this title, the court may also award a reasonable attorney's fee to the prevailing party as part of the costs." 17 U.S.C. § 505. The phrase "full costs" used in 17 U.S.C. § 505 is "commensurate with those costs allowed under 28 U.S.C. § 1920." Barrera v. Brooklyn Music, Ltd., 346 F. Supp. 2d 400, 405 (S.D.N.Y. 2004). 28 U.S.C. § 1920 indicates that the following are taxable costs:

1)  Fees of the clerk and marshal;

2)  Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;

3)  Fees and disbursements for printing and witnesses;

4)  Fees for exemplification and the costs of making copies of any materials where copies are necessarily obtained for use in the case;

5)  Docket fees under section 1923 of this title;

6)  Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

The plaintiffs seek $872.00 for the costs they incurred. Exhibit F to McCulloch's declaration identifies the costs incurred by the plaintiffs as follows: 1) $350.00, "Complaint Filing Fee"; 2) $105.00, "Service Fee For Serving Kraig R. Kast"; 3) $54.00, "Service Fee For Serving Only Websites"; 4) $41.00, "Service Fee For Serving Default – USPS"; and 5) $322.00, "Traveling Expense Amtrak Ticket to NYC And For Return." Except for the filing fee the plaintiffs tendered to the Clerk of Court to commence this action, $350.00, none of the costs

recited in Exhibit F to McCulloch's declaration is within the scope of 28 U.S.C. § 1920.

Therefore, an award of costs in excess of $350.00, is not warranted.

B.  Attorneys' Fees

In addition to their costs, the plaintiffs also seek the reasonable attorneys' fees they

incurred, pursuant to 17 U.S.C. § 505.  District courts have "considerable discretion in

determining what constitutes reasonable attorney's fees in a given case."  Barfield v. New York

City Health & Hospitals Corp., 537 F.3d 132, 151 (2d Cir. 2008).  When exercising their

discretion to determine the reasonableness of attorneys' fees, courts in this Circuit use the

"presumptively reasonable fee" standard.  Arbor Hill Concerned Citizens Neighborhood Ass'n v.

County of Albany, 522 F.3d 182, 190 (2d Cir. 2008).  The presumptively reasonable fee, also

known as the lodestar, is "the product of a reasonable hourly rate and the reasonable number of

hours required by the case."  Millea v. Metro-North R.R. Co., 658 F.3d 154, 166 (2d Cir. 2011).

In calculating the presumptively reasonable fee, a district court must consider, among others, the

twelve factors articulated in Johnson v. Ga. Highway Express, Inc., 488 F.2d 714 (5th Cir.

1974).  See Arbor Hill Concerned Citizens Neighborhood Ass'n, 522 F.3d at 190.  Those factors

are:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the
> level of skill required to perform the legal service properly; (4) the preclusion of
> employment by the attorney due to acceptance of the case; (5) the attorney's
> customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time
> limitations imposed by the client or the circumstances; (8) the amount involved in
> the case and the results obtained; (9) the experience, reputation, and ability of the
> attorneys; (10) the "undesirability" of the case; (11) the nature and length of the
> professional relationship with the client; and (12) awards in similar cases.

> Id. at 186-87 n.3.

A fee application that is not supported by evidence of "contemporaneous time records indicating, for each attorney, the date, the hours expended, and the nature of the work done" should normally be denied.  New York State Ass'n for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1154 (2d Cir. 1983).

When a court reviews a fee application, it should "[examine] the particular hours expended by counsel with a view to the value of the work product of the specific expenditures to the client's case," and in the event that the court "concludes that any expenditure of time was unreasonable, it should exclude these hours from the lodestar calculation." Luciano v. Olsten Corp., 109 F.3d 111, 116 (2d Cir. 1997).  Moreover, where block-billing entries appear in attorney time records – entries where multiple tasks are grouped together in a single billing entry and only the total time expended on all tasks in the group are reported – the use of such entries may prevent a court from performing a meaningful review of the reasonableness of the hours claimed and, further, may warrant a court in applying an across-the-board percentage reduction in the attorneys' claimed hourly total.  See Hines v. City of Albany, Nos. 14-2299-cv(L), 14-4045-cv (XAP), __ Fed. Appx. __, 2015 WL 3479820, at *3 (2d Cir. June 3, 2015).

The plaintiffs seek $112,880.00, in attorneys' fees for the legal services rendered to them by McCulloch and Daniel Nelson ("Nelson").  McCulloch's declaration identifies him as "a partner at Nelson & McCulloch, LLP; Nelson's status with the law firm is not revealed in the plaintiffs' inquest submissions.  The plaintiffs did not provide the Court with any information concerning the experience, reputation and abilities of the attorneys who provided legal services to them in connection with this litigation and they did not submit any evidence of their attorneys' customary hourly rates and how those rates compare with the hourly rates charged by attorneys of comparable knowledge, skills and abilities who litigate copyright law actions in this judicial district.  In addition, the plaintiffs' submissions are devoid of any information describing the

nature and length of their professional relationship with their counsel and whether, by virtue of

accepting this case, their counsel were precluded from taking on other legal work.

The Court has reviewed counsel's billing records, which are Exhibit F to McCulloch's

declaration. In doing so, the Court observed several instances where block-billing entries were

employed. For example, the July 12, 2012 and November 17, 2012 entries by McCulloch

contain the following, respectively:

> Review email from Daniel Todd at Only Websites; provide case
> update to client; draft and send email to Kast and review response.

> Draft reply in support of Motion for Default and supporting
> declaration; compile exhibits; revise and edit supplemental
> response to motion to dismiss; prepare for hearing.

Exhibit F to McCulloch's declaration indicates that "2.100" hours were expended by him with

respect to the tasks associated with the July 12, 2012 entry, and that he billed his time at the

hourly rate of $500. With respect to the November 17, 2012 entry, Exhibit F shows that "9.500"

hours were expended by McCulloch with respect to the tasks associated with that entry, and that

he billed his time at the hourly rate of $500. The Court also observed, when reviewing the law

firm billing records submitted by the plaintiffs that a number of the entries contained vague

descriptions of the work performed and that the entries did not specify how, if at all, the task(s)

performed related to this litigation. For example, a February 21, 2012 entry by Nelson states

only "review email from legal assistant. Draft and send response," and a March 9, 2012 entry by

Nelson states only "Review email from Jesse Hughes." Nelson expended "0.200" hours with

respect to the February 21, 2012 entry and "0.200" hours with respect to the March 9, 2012

entry. His hourly rate of compensation on each occasion was $600. No information was

provided establishing what the e-mail messages from the legal assistant or Hughes addressed or

how, if at all, they were pertinent to this case.

The failure of the plaintiffs to: 1) provide information about the backgrounds and professional experiences and reputations of their counsel; 2) submit evidence of the customary hourly rates charged by their counsel; and 3) demonstrate that the hourly rates charged by their counsel are comparable to the rates charged by similarly situated counsel in this judicial district, prevents the Court from assessing fully the reasonableness of the attorneys' fees the plaintiffs seek.  In like manner, the vague entries in the law firm's billing statement and the use of block-billing entries in that billing statement impede the Court's ability to ascertain what amount of time was expended on a discrete task(s) and thereby make a meaningful review of the reasonableness of the work performed and the hours claimed.  Therefore, the Court concludes that awarding the plaintiffs $112,880.00 in attorneys' fees is unreasonable and not warranted. Instead, to address the deficiencies in the submissions made by the plaintiffs in support of their request for attorneys' fees, a 40% across-the-board reduction in the attorneys' claimed hourly total will be made by the Court, yielding attorneys' fees of $45,152.00.  See Hensley v. Eckerhart, 461 U.S. 424, 433, 103 S. Ct. 1933, 1939 (1983) ("Where the documentation of hours is inadequate, the district court may reduce the award accordingly); see also Hines, 2015 WL 3479820, at *3.

Post-Judgment Interest

In a civil action where a money judgment is obtained, "interest shall be calculated from the date of entry of the judgement."  28 U.S.C. § 1961.  Therefore, the plaintiffs are entitled to post-judgment interest, to be calculated by the Clerk of Court, pursuant to 28 U.S.C. § 1961.

**RECOMMENDATION**

For the reasons set forth above, I recommend that the plaintiffs be awarded: $11,250.00, in enhanced statutory damages; 2) $350.00, in costs; and 3) $45,152.00, in attorneys' fees.  I recommend further that the plaintiffs be awarded post-judgment interest, to be calculated by the

Clerk of Court, in accordance with 28 U.S.C. § 1961.

## FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil

Procedure, the parties shall have fourteen (14) days from service of this Report to file written

objections.  See also Fed. R. Civ. P. 6.  Such objections, and any responses to objections, shall be

filed with the Clerk of Court, with courtesy copies delivered to the chambers of the Honorable

Paul G. Gardephe, 40 Centre Street, Room 705, New York, New York, 10007, and to the

chambers of the undersigned, 40 Centre Street, Room 425, New York, New York, 10007.  Any

requests for an extension of time for filing objections must be directed to Judge Gardephe.

*Failure to file objections within fourteen (14) days will result in a waiver of objections and*

*will preclude appellate review.*  See Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466 (1985);

Cephas v. Nash, 328 F.3d 98, 107 (2d Cir. 2003).

Dated:  New York, New York
        September 2, 2015

Respectfully submitted,

*Kevin Nathaniel Fox*

KEVIN NATHANIEL FOX
UNITED STATES MAGISTRATE JUDGE